UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN A. BOZSIK, | ) | CASE NO. 1:03CV01625 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | |
| MARGARET BAGLEY, Warden, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Respondent. | ) | |
| | ) | |

On July 3, 2007, Petitioner Steven A. Bozsik ("Bozsik") filed a "Motion to Reinstate Habeas Corpus Petition Incorrectly Dismissed Without Prejudice Infringing Against Palmer v. Carlton, 276 F.3d 777, 781 (6th Cir. 2002)." (Dkt. # 9). For the reasons set forth below, Bozsik's Motion, is **DENIED**.

I. **PROCEDURAL BACKGROUND**

    **A. Grand Jury Indictment**

On December 16, 1999, the Medina County Grand Jury indicted Bozsik for the killing of his wife, Carol, on November 30, 1999. The indictment charged Bozsik with one count of aggravated murder, in violation of Ohio Rev. Code § 2903.01(A), and one count of murder, in violation of Ohio Rev. Code § 2903.02(A). State v. Bozsik, No. 3091-M, 2001 Ohio App. LEXIS 5852, at *1 (Ohio Ct. App. Dec. 26, 2001). Each count contained a firearm specification, in violation of Ohio Rev. Code § 2941.145. Id. at *1–2. Bozsik pled not guilty. Id. at *2.

**B. Trial in the Medina County Court of Common Pleas**

The trial commenced on May 22, 2000, in the Medina County Court of Common Pleas, and the jury ultimately found Bozsik guilty as charged. Id. The trial court merged Bozsik's conviction for murder with his conviction for aggravated murder, and sentenced him to life in prison with the possibility of parole after twenty-three years. Id.

**C. Appeal to the Court of Appeals of Ohio, Ninth Appellate District**

Bozsik timely appealed to the Court of Appeals of Ohio, Ninth Appellate District, Medina County, alleging six assignments of error by the Court of Common Pleas:

1. Petitioner's convictions were against the manifest weight of the evidence.

2. The jury improperly rendered verdicts on both aggravated murder and murder contrary to the trial court's instructions.

3. The trial court erred in failing to instruct the jury on a lesser included offense of voluntary manslaughter.

4. The trial court erred in the admission of improper evidence.

5. The trial court erred in denying Bozsik's Motion to Compel Discovery with regard to information obtained in investigating a suspect other than Bozsik in the murder.

6. Trial counsel was ineffective in their representation of Bozsik.

Id. at *2–22. On December 26, 2001, the Court of Appeals denied all six of Bozsik's assignments of error and affirmed his conviction. Id.

**D. Appeal to the Supreme Court of Ohio**

Bozsik then appealed to the Supreme Court of Ohio. State v. Bozsik, 766 N.E.2d 1002 (Ohio 2002). On May 1, 2002, the Supreme Court of Ohio denied Bozsik's appeal. Id.

**E. Motion for New Trial**

On January 7, 2003, Bozsik filed a motion with the Medina Court of Common Pleas for leave to file a motion for new trial pursuant to Ohio Rule of Criminal Procedure 33. State v. Bozsik, No. 03CA0017-M, 2003 Ohio App. LEXIS 3500, at *2 (Ohio Ct. App. July 23, 2003). The trial court denied the motion. Id.

Bozsik timely appealed the trial court's denial of the motion for a new trial to the Court of Appeals of Ohio, Ninth District, alleging one assignment of error for review. Id. With his sole assignment of error, Bozsik argued that the trial court erred in denying his motion for leave to file a delayed motion for a new trial. Id. On July 23, 2003, the Court of Appeals denied Bozsik's sole assignment of error and affirmed the judgment of the Medina County Court of Common Pleas. Id. at 2–5.

**F. Petition for Writ of Habeas Corpus—Federal Court**

On February 28, 2003, Bozsik filed a pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Northern District of Ohio. (Dkt. # 1). On September 23, 2003, Chief Judge Paul R. Matia dismissed the action without prejudice. (Dkt. # 5). Chief Judge Matia found that Bozsik had not yet fully exhausted his state court remedies and was thus subject to the rule of Rose v.

Lundy, 455 U.S. 509, 522 (1982), that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims." (Dkt. # 5).

### G. Petition to Vacate Sentence

In July 2003, Bozsik filed a petition to vacate his sentence under the Ohio post conviction relief statute, codified at Ohio Rev. Code § 2953.21, in the Medina Court of Common Pleas. State v. Bozsik, No. 03CA0141-M, 2004 Ohio App. LEXIS 4527, at *2 (Ohio Ct. App. Sept. 22, 2004). His petition was based upon renewed allegations of witness perjury and the supposed withholding of exculpatory evidence. Id. The State responded with a motion for summary judgment, which the trial court granted. Id.

Bozsik appealed the trial court's decision to the Ohio Court of Appeals, Ninth District. Id. at *3. The Court of appeals ultimately dismissed his appeal. Id.

### H. Second Motion for New Trial

On August 12, 2003,[1] Bozsik claims he filed a second motion for new trial pursuant to Ohio Rule of Criminal Procedure 33. (Dkt. # 7). Bozsik alleges that the motion "continues to lay dormant" and that the court has "fail[ed] to issue a ruling" on the motion. (Dkt. # 7).

### I. Motion for Contempt of Court

In November 2003, Bozsik filed a motion for contempt of court in the Medina Court of Common Pleas. Bozsik, 2004 Ohio App. LEXIS 4527, at *3. In the motion, Bozsik alleged that the state prosecutors in his murder trial disregarded court discovery

---

[1] Bozsik claims to have filed the motion within thirty days of Judge Matia's dismissal of his habeas petition, in accordance with Palmer v. Carlton, 276 F.3d 777 (6th Cir. 2002). Bozsik has provided no proof of this allegation, however, and the Court has no record demonstrating that Bozsik did in fact file this motion within thirty days of dismissal.

4

orders, withheld and falsified evidence, and suborned perjury. Id. The trial court denied the motion. Id.

Bozsik appealed the trial court's decision to the Ohio Court of Appeals asserting four assignments of error. Id. The first three assignments of error all essentially argued that the trial court's denial of his request for a hearing on his accusations of contempt against the state violated his constitutional right to due process. Id. at *4. The fourth assignment of error asserted that the trial court erred when it denied his motion. Id. at *6. On September 22, 2004, the court of appeals denied all four of Bozsik's assignments of error and affirmed the trial court's judgment. Id. at *8.

Bozsik timely appealed to the Supreme Court of Ohio. State v. Bozsik, 821 N.E.2d 1027 (Ohio 2005). On February 2, 2005, the Ohio Supreme Court declined to accept the appeal for review. Id.

**J. Declaratory Judgment Action**

On July 29, 2003, Bozsik filed a complaint for declaratory judgment in the Medina County Court of Common Pleas, requesting an order changing his wife's time of death on the death certificate and declaring that the decedent's death occurred at 9:30 a.m., instead of 9:00 a.m. Bozsik v. Grabenstetter, No. 04CA0030-M, 2004 Ohio App. LEXIS 6276, at *1–2 (Ohio Ct. App. Dec. 15, 2004). The trial court dismissed Bozsik's complaint without a hearing on the grounds that the basis for the action was frivolous and malicious. Id. at *2.

Bozsik timely appealed to the Ohio Court of Appeals alleging one assignment of error for review. Id. With his sole assignment of error, Bozsik argued that the trial court

5

erred in failing to recognize the validity of his claim for a declaratory judgment. Id. On December 15, 2004, the Court of Appeals denied Bozsik's sole assignment of error and affirmed the trial court's judgment. Id. at *10.

Bozsik timely appealed to the Supreme Court of Ohio. Bozsik v. Grabenstetter, 826 N.E.2d 315 (Ohio 2005). On April 27, 2005, the Ohio Supreme Court declined to accept the appeal for review. Id.

### K. Petition for a Writ of Habeas Corpus—State Court

On March 3, 2006, Bozsik filed a petition in the Court of Appeals for Richland County for a writ of habeas corpus to compel his immediate release from prison. Bozsik v. Hudson, 852 N.E.2d 1200, 1201 (Ohio 2006). Bozsik asserted that the trial court had lacked jurisdiction to try, convict, and sentence him on the aggravated-murder charge because the trial court had denied him the effective assistance of counsel by conducting various "critical stage" hearings without the presence of his counsel. Id. Bozsik further alleged that the trial court had had an improper ex parte communication with the state and had permitted perjured testimony by the state's witnesses. Id. On March 15, 2006, the Court of Appeals denied the petition. Id.

Bozsik then appealed to the Supreme Court of Ohio claiming that the Court of Appeals erred in denying the writ because he had stated a prima facie claim for extraordinary relief in habeas corpus. Id. On September 6, 2006, the Ohio Supreme Court found Bozsik's claim to be without merit and affirmed the Court of Appeals' judgment. Id. at 1201–02. On November 1, 2006, the Ohio Supreme Court denied

Bozsik's motion for reconsideration of prior decision. Bozsik v. Hudson, 855 N.E.2d 1260 (Ohio 2006).

Bozsik then filed a petition for a writ of certiorari to the United States Supreme Court. On March 5, 2007, the Supreme Court denied Bozsik's petition. Bozsik v. Hudson, 127 S. Ct. 1490 (2007).

### L. Motion for Relief from Final Judgment

On April 2, 2007, Bozsik filed a motion in this Court for relief from final judgment pursuant to Federal Rule of Civil Procedure 60(b). (Dkt. # 7). In the motion, Bozsik requested that the Court hold his original habeas action in abeyance, on the condition that he returns to the Court with an amended habeas petition within thirty days of exhausting his state court remedies. (Dkt. # 7). On February 5, 2008, the Court inadvertently and improperly dismissed the motion as moot.

### M. Motion to Reinstate Habeas Corpus Petition

On July 3, 2008, Bozsik filed another motion in this Court to reinstate his habeas petition. (Dkt. # 9). In the motion, Bozsik requested that the Court reinstate the "improperly dismissed petition with a stay and abeyance order permitting [Bozsik] to proceed with the Ohio courts to exhaust the grounds currently being entertained by the Ohio courts." (Dkt. # 9). For the reasons that follow, the Court declines to grant Bozsik the relief he requests.

**II. LAW AND ANALYSIS**

Bozsik essentially argues that the Court should apply the doctrine of equitable tolling and reinstate his July 28, 2003, pro se petition for a writ of habeas corpus—despite the fact that it is now time-barred under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)—on the condition that he proceed to exhaust his state court remedies and then re-file in federal court within thirty days of exhaustion.  Bozsik puts the cart before the horse.  Bozsik must first exhaust his state court remedies before the Court will entertain his request to equitably toll his original habeas petition.

In support of his claim, Bozsik relies primarily on the Sixth Circuit's decision in Palmer v. Carlton, 276 F.3d 777 (6th Cir. 2002).  In Palmer, the Sixth Circuit adopted a stay-and-abeyance procedure—a mandatory form of equitable tolling.  The procedure only applies to those cases in which a mixed petition is dismissed near or after the expiration of the AEDPA limitations period.  Under this procedure, if a "petitioner files any unexhausted claims in state court within 30 days of dismissal and re-files in federal court within 30 days of exhaustion, the re-filed petition will automatically be considered timely."  Griffin v. Rogers, 399 F.3d 626 (6th Cir. 2005).

In addition to mandatory equitable tolling under Palmer and its progeny, there is an alternative basis upon which the court could toll the limitations period.  In other words, if Bozsik cannot satisfy Palmer's thirty-day re-filing prerequisites, the Court could, in its discretion, apply the traditional equitable tolling factors outlined by the Sixth

Circuit in Andrews v. Orr, 851 F.2d 146 (6th Cir. 1998), to determine whether to equitably toll the limitations period.

For the following reasons, the Court declines at this time to apply either the *mandatory* equitable tolling analysis, under Palmer, or the *traditional* equitable tolling analysis, under Andrews, to Bozsik's original petition.

### A. Mandatory Equitable Tolling

In AEDPA, Congress added a one-year statute of limitations for habeas corpus petitions. 28 U.S.C. § 2244(d). AEDPA's limitations period ushered in an unintended consequence with respect to timely-filed habeas petitions raising unexhausted claims. Prior to AEDPA, the Supreme Court, in Rose v. Lundy, 455 U.S. 509 (1982), had directed federal courts to dismiss habeas petitions that contained both exhausted and unexhausted claims—mixed petitions. Before AEDPA's limitation period, if a federal court dismissed a mixed habeas petition pursuant to Rose, the petitioner was free to exhaust the state court claims and then return to federal court unencumbered by any limitations period. AEDPA's limitations period, however, created a very small window in which the petitioner was permitted to return to federal court. And in Duncan v. Walker, 533 U.S. 167 (2001), the Supreme Court determined that the AEDPA limitations period does not toll during the pendency of the habeas petition itself. Id. at 181–82. The net effect of all this is plain: "When a case is dismissed pursuant to Rose, the limitations period generally will have expired, foreclosing the possibility of a timely re-filing in accordance with § 2244(d)(1)." Griffin v. Rogers, 399 F.3d 626, 632 (6th Cir. 2005).

In Duncan, Justice Stevens addressed the interplay between Rose and AEDPA's limitations period. 533 U.S. at 182 (Stevens, J., concurring). He suggested two alternative means by which federal courts could attempt to resolve this issue. First, he proposed a stay-and-abeyance procedure: "[I]n our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies." Id. at 182–83. Second, he encouraged federal courts to apply the doctrine of equitable tolling for petitioners who initially file within the one-year limitations period. Id. at 183 ("[N]either the Court's narrow holding, nor anything in the text or legislative history of AEDPA, precludes a federal court from deeming the limitations period tolled for such a petition as a matter of equity.").

Soon after the Supreme Court decided Duncan, the Second Circuit adopted the stay-and-abeyance procedure that Justice Stevens had proposed. Zarvela v. Artuz, 354 F.3d 374 (2d Cir. 2001). The Second Circuit mandated that district courts—if they elect to stay a mixed petition—should "explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed." Id. at 381.

In Palmer v. Carlton, 276 F.3d 777 (6th Cir. 2002), the case on which Bozsik primarily relies, the Sixth Circuit adopted the Second Circuit's stay-and-abeyance procedure from Zarvela. Id. at 781. The Sixth Circuit also "embraced this procedure's retroactive application to petitions that had been dismissed rather than stayed." Griffin,

10

399 F.3d at 635. Thus, Palmer ushered in a "new period of *mandatory* equitable tolling for petitioners who filed their federal habeas petitions within the statute of limitations but were forced to return to state court to exhaust certain claims." Griffin v. Rogers, 308 F.3d 647, 654 (6th Cir. 2002) (emphasis added). In accordance with Palmer, "[I]f such a petitioner files any unexhausted claims in state court within 30 days of dismissal and re-files in federal court within 30 days of exhaustion, the re-filed petition will automatically be considered timely." Griffin, 399 F.3d at 631.

In the instant case, Bozsik was convicted on June 12, 2000. (Dkt. # 7). The Court of Appeals affirmed the conviction on December 26, 2001. (Dkt. # 7). And on May 1, 2002, the Supreme Court of Ohio dismissed Bozsik's appeal as not involving any substantial constitutional questions. (Dkt. # 7). Bozsik then had 90 days from the date of that dismissal to file a petition for a writ of certiorari in the Supreme Court of the United States. Sup. Ct. R. 13.1. Since AEDPA's one-year statute of limitations does not begin to run until the day after the petition for a writ of certiorari is due in the Supreme Court, Bronaugh v. Ohio, 235 F.3d 280, 283–84 (6th Cir. 2000), the statute of limitations on Bozsik's petition began to run on July 30, 2002. Bozsik timely filed his petition for writ of habeas corpus in this Court on July 28, 2003,[2] two days before AEDPA's one-year limitations period was set to expire. (Dkt. # 1).

---

[2] Although the petition is listed in the docket as filed on July 31, 2003, Bozsik's actual petition is dated July 28, 2003. The prison mailbox rule of Houston v. Lack, 487 U.S. 266 (1988), applies to the time limits contained in § 2255 for filing motions to vacate. Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999). By analogy, the prison mailbox rule also applies to the filing of § 2254 cases. Thus, pursuant to the prison mailbox rule, Bozsik filed his petition on July 28, 2003, two days before AEDPA's one-year limitations period was set to expire.

11

On September 23, 2003, after AEDPA's limitations period expired, Chief Judge Paul R. Matia dismissed Bozsik's petition without prejudice, pursuant to Rose v. Lundy, 455 U.S. 509 (1982). Following Judge Matia's dismissal, and within 30 days therefrom, Bozsik claims that he filed a motion for a new trial in the Medina Court of Common Pleas on August 12, 2003. Assuming this is true, Bozsik clearly returned to state court within thirty days of dismissal, as prescribed in Palmer.

Having met Palmer's first thirty-day re-filing window, the question turns to whether Bozsik has met the second—i.e., whether Bozsik has re-filed in federal court within thirty days of exhausting his claims in state court. This is where Bozsik's argument fails. Bozsik admits that his August 12, 2003, motion for a new trial "continues to lay dormant." (Dkt. # 7). In other words, Bozsik has not yet exhausted his state court remedies because his motion is still pending in state court. Thus, Bozsik's motion is premature—he must first exhaust his state court claims, and only then may he re-file within thirty days in federal court.

While the Sixth Circuit's decision in Hargrove v. Brigano, 300 F.3d 717 (6th Cir. 2002), provides some authority for a prospective order of equitable tolling, the circumstances in that case were quite different than those in the instant case, and the Court will not extend its application. In Hargrove, a pro se petitioner sought habeas relief in federal district court. Id. at 718. Since the petitioner had never filed an appeal in state court, the district court dismissed the petition without prejudice to allow the petitioner to exhaust his state remedies. Id. However, rather than staying the petition, the district court, acting prospectively, ordered the tolling of the AEDPA limitations period on the

12

condition that the petitioner pursue his state remedies within thirty days of the dismissal and return to federal court within thirty days after exhaustion. Id. The Warden challenged this prospective order of equitable tolling, arguing that the court lacked jurisdiction and that the issue of equitable tolling should be decided, not by the dismissing court, but by the court receiving the subsequent, untimely petition after exhaustion. Id. at 719. The Sixth Circuit disagreed with the Warden, and it found the district court's prospective equitable tolling to be reasonable because "although the district court did not issue a stay in [the] case, it achieved the same result reached in Zarvela and approved in Palmer." Id. at 720–21.

Here, in ruling on the original petition, Judge Matia did not issue a stay in the case or employ Hargrove's prospective equitable tolling. The Court will not now revisit Judge Matia's decision. Bozsik must first fully exhaust his state remedies. Once he has done so he is free to re-file his petition within Palmer's thirty-day re-filing window. The receiving court will address the timeliness of the re-filed petition at that time.

### B. Traditional Equitable Tolling

Even if a petitioner cannot satisfy Palmer's thirty-day re-filing requirements, a district court may nonetheless apply the traditional equitable tolling analysis, established in Andrews v. Orr, 851 F.2d 146 (6th Cir. 1998), to determine whether to toll AEDPA's limitation period. Indeed, the Sixth Circuit has stated, "Beyond this stay-and-abeyance procedure and its retroactive application prescribed in Palmer, our cases neither require *nor prohibit* a court from determining whether the limitations period should be equitably tolled under Andrews." Griffin v. Rogers, 399 F.3d 626, 638 (6th Cir. 2005). In

13

determining whether to equitably toll the limitations period under the traditional analysis, courts in this Circuit consider the following five factors: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." Dunlap v. United States, 250 F.3d 1001, 1008 (6th Cir. 2001) (citing Andrews, 851 F.2d at 151).

At this point, it would be premature for the Court to apply the traditional equitable tolling factors to this case. Although Bozsik claims to have met Palmer's first thirty-day re-filing window, he has not yet exhausted his state court remedies; consequently, it remains to be seen whether he will meet Palmer's second thirty-day window. Bozsik must first exhaust his state court remedies and then re-file his habeas petition. At that time, the receiving court may properly determine whether Bozsik is entitled to mandatory equitable tolling under Palmer. If he is, then the receiving court need not engage in the traditional equitable tolling analysis. If he is not entitled to mandatory equitable tolling, however—because he fails to satisfy either of Palmer's thirty-day re-filing windows—then at that time, the receiving court may, in its discretion, decide whether to apply the Andrews equitable tolling factors.

## III. CONCLUSION

For the forgoing reasons, Bozsik's motion to reinstate his habeas corpus petition is **DENIED**.  (Dkt. # 9).  Bozsik should fully exhaust his state court remedies and then re-file his habeas petition in this Court within thirty days of exhaustion.  At that time, the receiving court may properly engage in the *mandatory* equitable tolling analysis, under Palmer, and the *traditional* equitable tolling analysis, under Andrews, should it choose to do so.

**IT IS SO ORDERED**.

**/s/ Peter C. Economus – September 8, 2008**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**

15