UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN A. BOZSIK, | ) | CASE No. 1:03CV1625 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MARGARET BRADSHAW, Warden, | ) | **ORDER AND** |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |

Petitioner Steven A. Bozsik ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. ##1, 12, 26.  Petitioner seeks relief for alleged constitutional violations that occurred during his Medina County, Ohio Court of Common Pleas conviction for one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A) and murder in violation of O.R.C. § 2903.01 (A)[1].  ECF Dkt. ##1, 12, 26; *see also* ECF Dkt. #48, Ex. 1, 2.  On December 23, 2009, Respondent Margaret Bradshaw filed a Return of Writ. ECF Dkt. #48.  On March 12, 2010, Petitioner filed a traverse.  ECF Dkt. #56.  On March 26, 2010, without leave of the Court, Respondent filed a response to Petitioner's traverse.  ECF Dkt. #60.

The Court referred the case to the undersigned for a Report and Recommendation. ECF Dkt. #16.  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition, in its entirety, with prejudice.

I.      **SYNOPSIS OF THE FACTS**

The Ninth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).  As set

---

[1]      The trial court merged Petitioner's convictions.  ECF Dkt. #48, Ex. 2.

forth by the Ninth District Court of Appeals, the facts are:

The Bozsik marriage was in trouble after twelve years of marriage, and two children. The Bozsiks stopped having intimate relations in the summer of 1999. Appellant's wife, Carol Bozsik, confided her marital problems to restaurant co-workers, and her thoughts of pursuing a divorce. In August of 1999, Carol Bozsik began a relationship with restaurant patron Richard Wise, that continued up to the day of her murder on November 30, 1999. Carol's relationship with Wise (who became a regular lunch patron) led to daily telephone conversations, including calls made by Wise to the Bozsik home, swapped love notes, and a penny charm with a heart shaped hole given by Wise that Carol wore thereafter. Carol told friends that she would seek a divorce after the holidays, and that she told appellant of her plan. Indeed, on November 9, 1999, appellant asked Carol's brother about his divorce lawyer, and said "I may need one." Bozsik asked Carol's brother what he should do about Wise, who Bozsik knew had a developing relationship with Carol. Bozsik also sought to initiate a relationship with two different women via the internet.

While his marriage was in shambles, Bozsik's financial status was equally grim. On November 30, 1999, Bozsik's credit card debt was $24,600. Bi-monthly the Bozsiks owed payments of $284.85 toward their credit card debt. In 1996, appellant took out a four-year loan of $9,000 from his 401-K plan, which had to be repaid with a bi-monthly payment of $104. In 1997, appellant withdrew another $15,000 from his 401-K plan. The Bozsiks had two mortgages on their home. On November 30, 1999, the Bozsiks were behind on their two mortgage payments, behind on their real estate tax payments, and behind on their monthly household bills.

As November 30, 1999, approached, an ominous confluence of marital and financial troubles suggests a motive for Steven Bozsik to kill his wife.

By November of 1999, appellant was suddenly interested in raising the life insurance coverage on Carol from $100,000 from two policies, to a total of $225,000. Because appellant failed to get the policy signed by Carol, the improved policy technically never took effect. On November 23, 1999, Bozsik made five different phone calls to his insurance agents. Bozsik stressed to his insurance agents that the new policy on Carol had to take effect before December 1, 1999.

Carol was at home the morning of November 30, 1999, getting ready to leave for work. Carol was on the phone with Wise from 7:45 a.m. to 8:46 a.m. Carol was fatally shot six times around 9:00 a.m. The penny charm that Carol wore-the bauble given her by boyfriend Wise-was ripped from her necklace.

Bozsik arrived at work that morning at 6:56 a.m. By 7:30 a.m. he left work for the 15 to 20 minute drive home, claiming he had to take out the garbage. Carol was talking on the phone with Wise from 7:45 a.m. to 8:46 a.m. Around 8:30 a.m., Carol told Wise that she saw appellant's car outside, but had not seen him in the house. At approximately 9:00 a.m., family acquaintance Anna Berry saw appellant driving eastbound about a half mile from his home. Appellant arrived back at work at 9:17 a.m. Carol never reported to work as scheduled at 10:00 a.m., though it was her practice to arrive approximately one hour before her shift began.

At 12:15 p.m., appellant disposed of a blue plastic bag at a dumpster at work. He was seen by a fellow employee, whereupon he flashed a look of rage and was very upset. Bozsik removed the blue plastic bag from the dumpster, and left the area. Authorities never recovered the murder weapon, a bloody rag that appellant said he used to wipe his bloody hands after he discovered Carol, and missing bed sheets that appellant said

were removed because of menstrual blood left after intercourse.FN2

> FN2. The Coroner concluded that Carol was not menstruating, and was negative for any semen.

At 3:03 p.m., having returned home from work, Bozsik called 911 to report Carol's murder. Medina County Sheriff's deputies quickly arrived and secured the crime scene. EMS workers determined that Carol had been dead for hours. Carol's purse was not disturbed, and the Bozsik residence was otherwise intact.

A gunshot residue ("GSR") test was administered on the hands of appellant. Appellant's jacket was seized for testing. Appellant was interviewed by detectives. Lieutenant John Detchon was quietly observing appellant as the crime scene was processed. Appellant said "You think I did this, don't you?" Lt. Detchon replied "Well, I'm not sure that you didn't." Appellant acted upset and was wringing his hands when he observed that Lt. Detchon was watching him.

The night of Carol's murder, appellant went to her father's house, where family members were grieving. When Darrell Burkhart, Carol's brother, arrived, appellant embraced him and said that he was so sorry.

Later in the evening, the conversation turned to GSR. Darrell Burkhart said "The son of a bitch who did this to my little sister is still going to have the gun powder on his hands. I've been shooting guns for a long time. If he touched the steering wheel, touched the door handle, whatever he touched, it's going to be on there." With that, appellant looked down at his fingers and asked "Can't you wash it off?" Darrell replied "No."

The funeral for Carol was held on December 3, 1999. As appellant viewed Carol's body in the open casket, appellant was heard by Darrell Burkhart to say "Oh, my God, what have I done to you?" After appellant's inculpatory statement, Burkhart told his father "Dad, I think we're sleeping with the enemy." Appellant and the two Bozsik children were staying with Carol's father after the slaying.

The GSR test came back positive on appellant's left hand. Appellant's jacket tested positive for lead particles on the right side and right sleeve, consistent with the firing of a gun.

Ballistics experts with the ATF and BCI determined that the six bullets used in Carol's murder were .38 caliber, and that the handgun used was either a .38 caliber or .357 caliber firearm. Authorities learned that appellant had possessed a .38 caliber handgun in the past. Appellant told Burkhart in February of 1999 that he carried a handgun to and from work because of crime. Authorities found two .357 caliber bullets in a filing cabinet in the Bozsik's living room. On November 30, 1999, the day Carol was killed, a responding paramedic asked Bozsik whether there were any guns in the house. Appellant replied "No, all I have is a rifle and a shotgun." The paramedic thought the answer strange, for Bozsik was asked about guns generally, not about a handgun. During a telephone conversation with neighbor Cathy Singleton on December 6, 1999, appellant told her he owned three guns, but that he could not find the third gun. When he was arrested, appellant told authorities that he never owned a handgun.

At trial, appellant pointed the finger at Carol's boyfriend, Richard Wise, as the culprit. Wise had no discernable motive to kill Carol, his girlfriend. The morning Carol was killed, she was talking to Wise from 7:45 a.m. to 8:46 a.m. During that conversation Carol told Wise that she saw appellant's car outside, but had not seen him in the house.

-3-

Carol told Wise to come look for her if she did not show up for work. Carol also expressed trepidation to Wise about whether she should be concerned about appellant seeking a higher life insurance policy for her that made appellant the beneficiary. Later, Wise would call Bozsik's home ten times starting at 11:25 a.m. looking for Carol. On December 1, 1999, detectives intercepted Wise as he came into the restaurant where Carol worked. Wise consented to have his pick up truck searched. Detectives found a card from Carol to Wise signed "I love you, Carol." Wise consented to an interview that went an hour and a half long. It was at the start of the interview that Wise first learned that Carol was dead, whereupon he cried. Wise turned over a firearm to authorities, which was tested and determined not to be the murder weapon. At the interview, Wise disclosed that he had never been to the Bozsik residence, and actually did not know exactly where Carol lived. Wise explained that after he went to lunch, he then went driving around Wadsworth looking for Carol's car.

ECF Dkt. #48, Ex. 7 at 3-9; *State v. Bozsik*, No. 3091-M, 2001 WL 1647719 at *1-*3 (Ohio App. 9 Dist., Dec. 26, 2001).

**II.      PROCEDURAL HISTORY**

     **A.      State Trial Court**

On December 16, 1999, the prosecuting attorney for Medina County, Ohio filed an indictment charging Petitioner with aggravated murder in violation of O.R.C. § 2903.01(A) and murder in violation of O.R.C. § 2903.01 (A).  ECF Dkt. #48, Ex. 1.  Both counts carried firearm specifications pursuant to O.R.C. § 2941.145.  *Id.*

Petitioner's case proceeded to a jury trial on May 23, 2000.  *See* ECF Dkt. #48, Attach. 6-25 (hereinafter "Tr.").  On June 12, 2000, the jury found Petitioner guilty of all counts charged in the indictment.  Tr. at 2615-17.

On June 16, 2000, the trial court held a sentencing hearing and merged Petitioner's convictions.  ECF Dkt. #48, Ex. 2.  The court sentenced Petitioner to a term of life in prison without eligibility for parole until he has served twenty three years of imprisonment for the aggravated murder conviction and a consecutive three year term for the firearm specification.  *Id.*  On the state's motion, the trial judge merged Count II into Count I.  *Id.*

     **B.      Direct Appeal**

On July 24, 2000, Petitioner filed a notice of appeal to the Ohio Ninth District Court of Appeals.  ECF Dkt. #48, Ex. 3.  Petitioner filed a brief on the merits, raising the following assignments of error:

1.      THE DEFENDANT-APPELLANT'S CONVICTION OF AGGRAVATED MURDER, R.C. 2903.01 AND MURDER, R.C. 2903.02(A) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

2.      THE DEFENDANT-APPELLANT'S CONVICTIONS ARE IN ERROR AS THE JURY RENDERED VERDICTS ON BOTH AGGRAVATED MURDER AND MURDER CONTRARY TO THE INSTRUCTIONS GIVEN BY THE COURT.

3.      THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON A LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER.

4.      THE TRIAL COURT ERRED IN THE ADMISSION OF IMPROPER EVIDENCE.

5.      THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO COMPEL DISCOVERY WITH REGARD TO INFORMATION OBTAINED IN INVESTIGATING A SUSPECT OTHER THAN DEFENDANT-APPELLANT IN THE MURDER.

6.      TRIAL COUNSEL WAS INEFFECTIVE IN THEIR REPRESENTATION OF THE DEFENDANT-APPELLANT.

ECF Dkt. #48, Ex. 4 at iv.  On December 27, 2001, the court denied Petitioner's appeal and affirmed the trial court's conviction.  ECF Dkt. #48, Ex. 7.

On February 5, 2002, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #48, Ex. 8.  Petitioner filed a memorandum in support of jurisdiction, raising the following propositions of law:

**No. 1:**  The Defendant-Appellant's convictions are in error as the jury rendered verdicts on both Aggravated Murder and Murder contrary to the instructions given by the Court.

**No. 2:**  The Trial Court erred in failing to instruct the jury on a lesser included offense of Voluntary Manslaughter.

**No. 3:**  The Trial Court erred in the admission of improper evidence.

**No. 4:**  The Trial Court erred in denying Defendant-Appellants [sic] Motion to compel discovery with regard to information obtained in investigating with regard to information obtained in investigating a suspect other than Defendant-Appellant.

**No. 5:**  Trial Counsel was ineffective in their representation of the Defendant-Appellant.

ECF Dkt. #48, Ex. 9 at ii.  On May 1, 2002, the Supreme Court of Ohio dismissed Petitioner's appeal as not involving a substantial constitutional question.  ECF Dkt. #48, Ex. 11.

-5-

**C.**     **Petition to Vacate or Set Aside Sentence**

On July 3, 2003, Petitioner filed a petition to vacate or set aside his sentence pursuant to

O.R.C. § 2953.21.  ECF Dkt. #48, Ex. 18.  The petition set forth the following claims:

**I.**      THE PETITIONER WAS DENIED HIS DUE PROCESS OF LAW BY THE STATE, VIOLATING THE FOURTEENTH AMENDMENT OF THE UNITED STATES OF AMERICA AND SECTION 16, ARTICLE I OF THE STATE OF OHIO CONSTITUTION FROM PERJURY PRESENTED BY STATE WITNESSES DURING THE PETITIONER'S TRIAL.

**II.**     THE PETITIONER WAS DENIED HIS DUE PROCESS OF LAW BY THE STATE, VIOLATING THE FOURTEENTH AMENDMENT OF THE UNTIED STATES AND SECTION 16, ARTICLE I, OF THE STATE OF OHIO CONSTITUTION FROM THE AUTHORITIES SUPPRESSION OF EXCULPATORY EVIDENCE.

**III.**    THE PETITIONER WAS DENIED HIS DUE PROCESS BY THE STATE, VIOLATING THE FOURTEENTH AMENDMENT OF THE UNITED STATES OF AMERICA AND SECTION 16, ARTICLE I OF THE STATE OF OHIO CONSTITUTION BY THE STATE PRESENTING ALLEGATIONS OUTSIDE OF EVIDENCE AT TRIAL.

**IV.**     THE PETITIONER WAS DENIED HIS DUE PROCESS OF LAW BY THE STATE, VIOLATED THE REQUIREMENTS IN CRIMINAL RULE 16, WHEREBY THE EXCULPATORY EVIDENCE WAS NOT DISCLOSED AS REQUIRED: EVEN WHEN, THE DEFENDANT SPECIFICALLY REQUESTED THE UNDISCLOSED EVIDENCE.

**V.**      THE PETITIONER WAS DENIED HIS DUE PROCESS OF LAW BY THE STATE, VIOLATING THE FOURTEENTH AMENDMENT OF THE UNITED STATE OF AMERICA AND SECTION 16, ARTICLE I, OF THE STATE OF OHIO CONSTITUTION WHEN THE STATE WITH HELD SCIENTIFIC, AND INVESTIGATIVE INFORMATION FROM THE CORONER AND PATHOLOGIST.

**VI.**     THE PETITIONER WAS DENIED HIS DUE PROCESS OF LAW BY THE STATE, VIOLATING THE FOURTEENTH AMENDMENT OF THE UNITED STATES OF AMERICA AND SECTION 16, ARTICLE I, OF THE STATE OF OHIO CONSTITUTION WHEN THE STATE PREJUDICED THE PETITIONER DURING  CLOSEING [SIC].

**VII.**    THE PETITIONER WAS DENIED HIS DUE PROCESS OF LAW BY THE STATE, VIOLATING THE FOURTEENTH AMENDMENT OF THE UNITED STATES AND SECTION 16, ARTICLE I, OF THE STATE OF OHIO CONSTITUTION FROM ALL THE DUE PROCESS ERRORS IN THE PETITIONER'S TRIAL.

**VIII.**   THE PETITIONER WAS DEPRIVED OF HIS FOURTH AMENDMENT RIGHT TO BE FREE FROM ILLEGAL SEARCHES AND SEIZURES.

**IX.**     THE PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

**X.**     THE PETITIONER WAS DENIED HIS DUE PROCESS OF LAW BY THE STATE VIOLATING THE FOURTEENTH AMENDMENT OF THE UNITED STATES AND SECTION 16, ARTICLE I, OF THE STATE OF OHIO CONSTITUTION BY VIOLATING THE TRIAL COURT'S INTEGRITY AND NOT ALLOWING THE PETITIONER AN OPPORTUNITY TO RECEIVE A FAIR TRIAL.

ECF Dkt. #48, Ex. 18.  On August 12, 2003, the State filed a motion for summary judgment on the ground that the petition was untimely.  ECF Dkt. #48, Ex. 19.  On November 14, 2003, the trial court granted the State's motion and dismissed Petitioner's petition.  ECF Dkt. #48, Ex. 20.  On December 2, 2003, Petitioner filed a notice of appeal to the Ninth District Court of Appeals.  ECF Dkt. #48, Ex. 21.

On February 9, 2004, the appellate court issued an order indicating that Petitioner's appellate brief did not comply with the local rules.  ECF Dkt. #48, Ex. 22.  The court struck Petitioner's brief and ordered Petitioner to file a complying brief on or before February 20, 2004, with the filing date to be determined as the date on which the appellate court clerk time stamped the document.  *Id*.  On February 23, 2004, Petitioner filed a brief raising the following assignments of error:

**I.**     THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE'S MOTION FOR SUMMARY JUDGMENT AND DENIED THE APPELLANT AN EVIDENTIARY HEARING IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHT [SIC], NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE I: SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE STATE OF OHIO CONSTITUTION WHEN THE APPELLANT SUBMITTED MATERIAL SUPPORT THAT DEHORS THE RECORD AND ALL THE ISSUES WHERE [SIC] NOT CONTRADICTED ACCORDING TO LAW.

**II.**    THE TRIAL COURT ERRED IN GRANTING THE STATE'S SUMMARY JUDGMENT AND DENYING THE PETITIONER'S PETITION FOR BEING UNTIMELY FILING AND THE TRIAL COURT WAS WITHOUT JURISDICTION, EVEN THOUGH THE PETITIONER SUPPLIED ALL THE REQUIREMENT ACCORDING TO STATUTE AND THE STATE DID NOT FILE A PROPER CONTRA OR SUMMARY JUDGMENT TO ALL THE ISSUES TO THE TRIAL COURT, THUS VIOLATING THE PETITIONER'S DUE PROCESS RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I: SECTIONS 10 AND 16 OF THE STATE OF OHIO CONSTITUTION.

**III.**   THE TRIAL COURT ERRED GRANTING THE STATE SUMMARY JUDGMENT, AND DISMISSING THE APPELLANT'S PETITION FOR POST CONVICTION RELIEF WITHOUT A MOTION OR ANSWER BY THE STATE AND WITHOUT GIVING PRIOR NOTICE TO THE PETITIONER OF THE COURT'S INTENTIONS ALLOWING THE

-7-

PETITIONER TO CORRECT OR MAKE AMMENDMENTS [SIC] TO THE PETITION, THUS VIOLATING THE PETITIONER'S DUE PROCESS RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I: SECTIONS 10 AND 16 OF THE STATE OF OHIO CONSTITUTION.

IV.    THE TRIAL COURT ERRED BECAUSE THE NOVEMBER 14, 2003 JUDGMENT ENTRY AND THE FINDING OF FACTS WITH CONCLUSION OF LAW WERE BASED ON UNREASONABLE DETERMINATION OF THE UNDERLYING FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE AFFIDAVITS AND EXHIBITS ACCOMPANYING THE PETITION AND APPLICABLE LAW IN VIOLATION OF PETITIONER'S DUE PROCESS RIGHTS UNDER THE UNITED STATES AND THE STATE OF OHIO CONSTITUTIONS.

ECF Dkt. #48, Ex. 23.  On February 25, 2004, the State filed a motion to dismiss Petitioner's appeal as untimely.  ECF Dkt. #48, Ex. 24.  On March 1, 2004, Petitioner filed a "Motion in Opposition to Appellee's Motion to Dismiss," alleging that he sent his appellate brief on February 17, 2004.  ECF Dkt. #48, Ex. 25.  On March 30, 2004, the appellate court denied Petitioner's motion and granted the State's motion to dismiss the appeal.  ECF Dkt. #48, Ex. 26.

On April 6, 2004, Petitioner filed a motion for leave to re-file his appellate brief instanter. ECF Dkt. #48, Ex. 27.  The same day, Petitioner filed a motion for reconsideration pursuant to Ohio Rule of Appellate Procedure 26(A).  ECF Dkt. #48, Ex. 28.  Specifically, Petitioner sought for the appellate court to reconsider its order denying his motion for leave to file his appellate brief instanter.  *Id.*  On April 23, 3004, the appellate court denied both of Petitioner's motions.  ECF Dkt. #48, Ex. 29.

On April 30, 2004, Petitioner filed a motion for the appellate court to certify the record to the Supreme Court of Ohio pursuant to Ohio Rule of Appellate Procedure 25.  ECF Dkt. #48, Ex. 30.  On May 21, 2004, the appellate court denied Petitioner's motion as untimely.  ECF Dkt. #48, Ex. 31.

On May 4, 2004, while his motion to certify the record was pending, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #48, Ex. 32.  Petitioner filed a memorandum in support of jurisdiction, raising the following proposition of law:

The appellate court abused its discretion and deprived Appellant of his due course of law through Article I, Section 16 of the Ohio Constitution involving his equal

-8-

> protection of the law and Governing Ruled of the Appellate Court in the State of Ohio, when it:  (1) outright dismissed his appeal from a timely filed brief, and (2) it did not proceed with the merits of the appeal for a minor, technical, correctible, inadvertant [sic] violation of the Rules of the Appellate Court, and refused to reinstate the case according to the fundamental tenet of judicial review in Ohio Courts, adopted by the Ohio Supreme Court.

ECF Dkt. #48, Ex. 33.  On August 4, 2004, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt. #48, Ex. 35.

### D.  Motion for New Trial

On January 7, 2003, Petitioner filed a motion in the Medina Court of Common Pleas, requesting leave to file a motion for a new trial.  ECF Dkt. #48, Ex. 12.  Petitioner's motion contended that he did not receive vital exculpatory evidence that would have established that he could not have murdered the victim.  *Id*. at 4.  On February 3, 2003, the trial court denied Petitioner's motion because Petitioner's motion was filed outside of the time set forth in Ohio Rule of Criminal Procedure 33(A)(6).  ECF Dkt. #48, Ex. 14.

On February 25, 2003, Petitioner filed an appeal of the trial court's judgment denying leave to file a motion for a new trial.  ECF Dkt. #48, Ex. 15.  On July 23, 2003, the Ninth District Court of Appeals affirmed the trial court's judgment.  ECF Dkt. #48, Ex. 16, 17.

### E.  2003 Federal Habeas Petition – Initial Adjudication

On July 28, 2003, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 ("2003 petition").  ECF Dkt. #1.  ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities).  The 2003 petition raised the following grounds for relief:

| | |
|---|---|
| **Ground One:** | Conviction was obtained by biased jury denying the Trial Court's instructions prior to deliberations. |
| **Supporting facts:** | The trial court instructed the jury that if a guilty plea was obtained they must suspend there [sic] deliberations; however, if a guilty plea cannot be decided on Count I the jury must then proceed to Count II murder otherwise the Defendant must be foung [sic] Not Guilty. |
| | From the fraud presented before the trial court's jury, the jury returned guilty verdict to both counts violating the trial courts instructions. |

-9-

| | |
|---|---|
| **Ground Two:** | Conviction was obtained without the Trial Court instructing the Jury of the lesser included offense of Manslaughter considering the State presented evidence supporting the offense. |
| **Supporting Facts:** | The State presented false evidence the petitioner had a temper and it was insinuated with bald assertion that patitioner [sic] was capable of committing the crime from his anger control. |
| | The jury, in fact was prejudiced by the state attorney from the error committed in Ground I. |
| **Ground Three:** | Conviction was obtained by the trial court violating petitioners due process admitting improper evidence. |
| **Supporting Facts:** | The State presented evidence upon which is improper due to 1) The testimony of Cheryl Gerhaert was improper because it shows no motive to the crime; and 2) The testimony of Curtis Jones was prejudicial because the "scientific test" is not respected in the scientific community for Gun Shot Residue. |
| **Ground Four:** | Conviction Was obtained in violation of Discovery and Crim. R. 16 |
| **Supporting Facts:** | The investigation involving the homicide revealed two probable suspects and the trial court denied a specified discovery request of the petitioner reviewing the investigation of the other suspect.  The trial court denies the discovery request violating the petitioners due process of law rights by the state. |
| **Ground Five:** | Conviction was obtained in violation of Petitioners Sixth Amendment Rights to Effective Assistance of Counsel |
| **Supporting Facts:** | Counsel was ineffective by not objecting to critical trier of facts; in addition, not filing proper motions during trial. |

ECF Dkt. #1.  On September 23, 2003, U.S. District Judge Paul R. Matia dismissed the petition without prejudice for raising issues that were not fully exhausted.  ECF Dkt. #5, 6.

### F.      Motion for Contempt

On November 21, 2003, Petitioner filed a "Motion for Contempt of Court Against State of Ohio Counsel and Witness."  ECF Dkt. #48, Ex. 36.  Petitioner listed several individuals who allegedly committed perjury during his criminal trial: Kevin Ross, Warren Walter, Sheriff Neil Hessinger, Darrell Burkhart, Prosecutor Dean Holman and Assistant Prosecutor Scott Salisbury. *Id.*  On November 28, 2003, the court denied Petitioner's motion.  ECF Dkt. #48, Ex. 37.

On December 8, 2003 Petitioner filed a notice of appeal to the Ninth District Court of Appeals. ECF Dkt. #48, Ex. 38.  Petitioner filed a brief on the merits, raising the following

-10-

assignments of error:

**I.**  THE TRIAL COURT ERRED AND PREJUDICED APPELLANT DENYING A SHOW CAUSE HEARING FOR CONTEMPT OF THE COURT IN VIOLATION OF DUE PROCESS RIGHT FROM THE UNITED STATES AND STATE OF OHIO CONSTITUTION.

**II.**  THE TRIAL COURT ERRED AND COMMITTED PREJUDICIAL ERROR ALLOWING THE STATE OF OHIO AND STATE WITNESSES ABUSE THE TRIAL COURT'S INTEGRITY WITHOUT A HEARING ALLOWING THE APPELLANT TO SHOW CONTEMPT AND THE CRIMINAL INJURY AGAINST THE TRIAL COURT AND APPELLANT'S DUE PROCESS RIGHTS FOR POST TRIAL EXCULPATORY EVIDENCE.

**III.**  THE TRIAL COURT ERRED AND PREJUDICED THE APPELLANT WHEN IT FAILED TO CONDUCT A HEARING TO SHOW CAUSE OF CONTEMPT VIOLATING ITS OWN LOCAL RULE PREJUDICING THE APPELLANT'S DUE PROCESS AFTER COMPLYING TO THE LOCAL RULE OF THE TRIAL COURT.

**IV.**  BECAUSE APPELLANT WAS PREJUDICED BY THE STATE OF OHIO AND ITS AGENTS FOR CONTEMPT OF THE TRIAL COURT'S ORDERS FOR DISCOVERY AND STATE WITNESSES CRIMINALLY INJURED APPELLANT DURING TRIAL WITH PERJURY, THE TRIAL COURT ERRED IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I; SECTIONS TEN AND SIXTEEN OF THE STATE OF OHIO CONSTITUTION BY NOT RECOGNIZING THE CONTEMPT CORRECTING THE INJURY TO THE APPELLANT.

ECF Dkt. #48, Ex. 39.  The Ninth District Court of Appeals affirmed the trial court's judgment. ECF Dkt. #48, Ex. 42.[2]

On October 1, 2004, Petitioner filed a motion for the appellate court to certify the record to the Supreme Court of Ohio for review pursuant to Ohio Rule of Appellate Procedure 25.  ECF Dkt. #48, Ex. 43.  Petitioner also filed a motion for reconsideration pursuant to Ohio Rule of Appellate Procedure 26(A).  ECF Dkt. #48, Ex. 44.  On October 18, 2004, the appellate court denied both motions.  ECF Dkt. #48, Ex. 45, 46.

On November 3, 2004, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #48, Ex. 47.  Petitioner filed a memorandum in support of jurisdiction, raising the following

---

[2]  This opinion is not signed, time-stamped, or dated.  *But see State v. Bozsik*, No. 03CA0141-M, 2004 WL 2244267 (Ohio App. 9 Dist. Sept. 22, 2004), unreported.  The case appearing on Westlaw under the citation 2004 WL 2244267 appears to contain the same text as Exhibit 42 to the return of writ.

propositions of law:

    **1.**    The trial court erred and failed to conduct a properly required hearing according to statute for in-direct criminal contempt violating Appellant's due process rights to equal protection of the law protected by the Fourteenth Amendment to the United States Constitution and the right to be heard pursuant to Article I, Section 16 to the Ohio Constitution when probable cause was provided by Appellant to conduct a proper contempt proceeding pursuant to R.C. 2705.05 of the Ohio Revised Code.

    **2.**    The court of appeals committed reversible eror [sic] and deprived Appellant of his due process according to statute when it ambiguously defined statute for contempt violating Appellant's equal protection by the Fourteenth Amendment to the United States Constitution and the right to be heard and seek redress in an Ohio court pursuant to Article I, Section 16 of the Ohio Constitution pursuant to §2705.02 through §2705.05 of the Ohio Revised Code.

    **3.**    The court of appeals committed reversible error and deprived Appellant his due process rights to a fair and equal appeal when it allowed Appellees to provide an initial defense that could have and should have been presented to the trial court in violation of statute and Rule 12 of the Rules of Appellate Procedure when the court failed to notify the parties for an equal protection to brief the issues before the court.

    **4.**    The court of appeals committed reversible error and deprived Appellant of his due process rights when the doctrine of res judicata was applied to Appellant when the defense was never raised, including contempt is a separate litigation in itself and the prima facie case dehors the record.

    **5.**    The court of appeals lacked jurisdiction to review the appeal and the judgments rendered by the court are nullity and void ab initio.

ECF Dkt. #48, Ex. 48.  On February 2, 2005, the Supreme Court of Ohio declined jurisdiction to hear the case.  ECF Dkt. #48, Ex. 50.

    **G.**    **Vexatious Litigator Order**

    On March 3, 2004, the Medina County Prosecutor filed a complaint seeking to have Petitioner declared a vexatious litigator pursuant to O.R.C. §2323.52(A)(3).  ECF Dkt. #48, Ex. 51. On March 17, 2005, on consideration of reciprocal motions for summary judgment, Judge James L. Kimbler of the Medina County Court of Common Pleas issued an order declaring Petitioner to be a vexatious litigator pursuant to O.R.C. § 2323.52(A)(3).  ECF Dkt. #48, Ex. 51.  The court order prohibited Petitioner from doing any of the following without first obtaining leave of court:

    a)    Instituting any legal proceedings in the court of claims, or in a court of common pleas, municipal court, or county court;

    b)    Continuing any legal proceedings that he has instituted in any of the aforesaid courts prior to the entry of this Order; and

    c)    Making any application, other than an application for leave to proceed under R.C. 2323.52(F)(1), in any legal proceeding instituted by the Defendant or another person in the court of claims or in a court of common pleas, municipal court, or county court.

ECF Dkt. #48, Ex. 51.  On May 19, 2005, the Medina County Court of Common Pleas issued an order indicating that Petitioner had filed a motion for reconsideration, and the court instructed the clerk's office to refuse any further papers submitted by Petitioner if leave has not been granted.  ECF Dkt. #48, Ex. 52.

### H.    Ohio Complaint for Habeas Corpus

On March 3, 2006, Petitioner field a Complaint for Habeas Corpus in the Ohio Fifth District Court of Appeals.  ECF Dkt. #48, Ex. 53.  The pertinent part of the petition alleged that:

**5.**    The Common Pleas Court of Medina County lacked jurisdiction to find verdict from the jury, sentence and conviction, where no defense counsel waiver exist's when the trial court conducted ex parte communication with the State after defense counsel filed motion's for discovery from the investigation files and the State voluntarily turned its investigation file to the trial court without defense counsel, present; or waiver by the Petitioner.

**6.**    The Common Pleas Court of Medina Couty [sic] lacked jurisdiction to find verdict from the jury. sentence and conviction, where no defense counsel waiver exist's when two "critical stage" hearins [sic] where held by the trial court without defense counsel present to assure the Petitioner's rights are protected and he receives a fair trial.

**7.**    The Common Pleas Court of Medina County lacked jurisdiction to find verdict from the jury, sentence and conviction, when the court and the State failed to disclosed exculpatory and impeaching evidence under *Brady v. Maryland* 373 U.S. , 83 S.Ct. 1194 (1963) from the ex parte hearing the court held without defense counsel present and no waiver was obtained by the Petitioner.

**8.**    The Common Pleas Court of Medina County lacked Jurisdiction to find verdict sentence and conviction when the court and the State allowed perjured or false and misleading testimony by the State and state witnesses without correcting the perjured or false and misleading testimony incriminating the Petitioner.

**9.**    The Common Pleas Court of Medina County, lacked jurisdiction to find verdict sentenced and conviction when the court denied the Petitioner to be present during the presentation of evidence during the ex parte communication between the State and the court and ex parte hearing where evidence was reviewed.

**10.**    The Common Pleas Court of Medina County lacked jurisdiction to find verdict sentence and conviction when the court denied the Petitioner to be present during the morning trial testimony on June 1, 2000 without a valid waiver by the Petitioner.

-13-

11.     The Common Pleas Court of Medina County lacked jurisdiction to find conviction sentence and verdict when the integrity of the court was tarnished by the State with evidence suppression and promoting perjured testimony by the investigation officer's leading to the Petitioner's conviction also, the court never notified the Petitioner or counsel the court's integrity was tarnished.

12.     The Common Pleas Court of Medina County lacked jurisdiction to find verdict sentence and conviction when the court failed to incorporate a proper record of all communication, hearing, adjudication of Petitioner's pending motions and sealed records for a proper appeal of right guaranteed to the Petitioner.

ECF Dkt. #48, Ex. 53.  On March 15, 2006, the appellate court denied the petition.  ECF Dkt. #48, Ex. 54.

Petitioner appealed the appellate court's decision to the Supreme Court of Ohio.  ECF Dkt. #48, Ex. 55.  The Supreme Court of Ohio affirmed the appellate court's decision.  *Id.*

## I.     2006 Federal Habeas Petition

On April 5, 2006, Petitioner filed a petition for habeas corpus pursuant to 28 U.S.C . §2254 ("2006 petition").  ECF Dkt. #48, Ex. 56.  The petition set forth the following grounds for relief:

**Ground One:**       Conviction obtained by the unconstitutional failure of the prosecution to correct false and misleading testimony by State Witnesses even after the defendant impeached the state witness testimony which included the Lead Investigation Officer of the case.

**Ground Two:**       Conviction was obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

**Ground Three:**     Conviction was obtained by the unconstitutional failure of the prosecution and trial judge to protect the integrity of the trial court holding ex parte discussion when the investigation files where [sic] turned over to the trial judge without defense counsel present.

**Ground Four:**      Conviction was obtained by the unconstitutional failure of the trial court assuring the defendant was afforded his rights to counsel without a valid waiver.

**Ground Four:**[3]   Defendant was denied his constitutional right to an effective appeal when the trial court and prosecuting attorney held hearings outside the record.

---

3       The petition contains two claims numbered "Ground Four."

| **Ground Five:** | Conviction was obtained by the unconstitutional failure of the prosecuting attorney to bolster false and misleading testimony during closing to the jury. |
| **Ground Six:** | Conviction was obtained by the unconstitutional failure of of [sic] the investigation officer[s] (State) to assure exculpatory evidence is not destroyed. |
| **Ground Seven:** | Conviction is not supported by the sufficiency of the evidence, (actual innocence) especially after the post trial disclosed documents substantiates actual innocence of the crime. |

ECF Dkt. #48, Ex. 56.  On December 13, 2006, U.S. Magistrate Judge David S. Perelman recommended that U.S. District Judge Donald C. Nugent dismiss the petition as untimely.  ECF Dkt. #48, Ex. 57.  On January 28, 2007, Judge Nugent dismissed the 2006 petition.  ECF Dkt. #48, Ex. 58.

Petitioner filed a motion in the Sixth Circuit Court of Appeals, seeking a certificate of appealability.  ECF Dkt. #48, Ex. 60.  The court denied Petitioner's motion.  *Id.*

On October 26, 2007, Petitioner filed a motion in the District Court seeking relief from judgment pursuant to Federal Rule of Civil Procedure 60(b).  ECF Dkt. #48, Ex. 61.  On January 11, 2008, Judge Nugent denied Petitioner's motion.  ECF Dkt. #48, Ex. 62.

On February 6, 2008, Petitioner filed a notice of appeal to the Sixth Circuit Court of Appeals. ECF Dkt. #48, Ex. 63.  On April 4, 2008, the Sixth Circuit Court of Appeals remanded the case to the District Court to determine whether a certificate of appealability should be granted.  ECF Dkt. #48, Ex. 64.  On April 16, 2008, Judge Nugent denied a certificate of appealability.  ECF Dkt. #48, Ex. 65.  On October 22, 2008, the Court of Appeals denied Petitioner's motion for a certificate of appealability.  ECF Dkt. #48, Ex. 66.

### J. Vexatious Litigator Order Enforcement & Supreme Court of Ohio Vexatious Litigator Order – 2007-2008

Throughout 2007 and 2008, the state courts enforced the vexatious litigator order on several occasions, finding that reasonable grounds for Petitioner's various motions did not exist.  *See* ECF Dkt. #48, Ex. 68-75.  Petitioner filed a complaint in the Supreme Court of Ohio against the judges

-15-

of the Ninth District Court of Appeals, seeking a writ of prohibition.  ECF Dkt. #48, Ex. 76.[4]  The Supreme Court of Ohio dismissed Petitioner's case and declared him to be a vexatious litigator pursuant to Ohio Supreme Court Rule of Practice XIV(5)(B).  *Id.*

On October 3, 2008, the Medina County Court of Common Pleas entered an order that listed 14 of Petitioner's pending filings, of which the court was aware, and denied them as not being based on reasonable grounds.  ECF Dkt. #48, Ex. 77.  The court denied "each and every, all and singular, pending motions and petitioner, and pending motions for leave to file motions."  *Id.*

On June 24, 2009, Petitioner filed a motion in the Ninth District Court of Appeals, seeking leave to file an action in mandamus compelling Judge Kimbler to issue a final order pertaining to the vexatious litigator order.  ECF Dkt. #48, Ex. 78.  Petitioner contended that Judge Kimbler's March 17, 2005 order declaring him to be a vexatious litigator is void because it is an interlocutory order.  *Id.*  On July 13, 2009, the appellate court denied Petitioner's motion, concluding that it was not based upon reasonable grounds.  ECF Dkt. #48, Ex. 79.

On September 10, 2009, Petitioner filed a motion for leave to file a writ of mandamus against Judge Curran, who the Chief Justice assigned as the trial judge after Judge Collier recused himself from the case.  ECF Dkt. #48, Ex 80.  Petitioner contends that the sentencing hearing and the resulting judgment entry were void because the trial judge failed to impose mandatory court costs as O.R.C. § 2947.23 required.  *Id.*  Respondent contends that this petition remains pending in the Ninth District Court of Appeals.  ECF Dkt. #48 at 22.

**K.      Reinstatement of 2003 Federal Habeas Petition**

On July 3, 2008, Petitioner filed a motion seeking to reinstate his 2003 petition.  ECF Dkt. #9.  On September 8, 2008, U.S. District Judge Peter C. Economus denied the motion, finding that Petitioner had not yet exhausted his state court remedies.  ECF Dkt. #10.  On November 5, 2008, Petitioner filed a second motion to reinstate his 2003 petition, contending that he was unable to exhaust his constitutional claims because he was in a "procedural quagmire" as a result of the vexatious litigator orders.  ECF Dkt. #11.  Petitioner also filed a motion to amend the 2003 petition.

---

[4]        The order that Respondent has provided is not signed or dated.

-16-

ECF Dkt. #12.  On December 16, 2008, Judge Economus granted Petitioner's motions, finding that Judge Curran's order[5] declaring Petitioner to be a vexatious litigator "effectively prohibited Bozsik from seeking any further relief in state court. . . And . . . requiring Bozsik to further pursue state-court remedies 'would be an exercise in futility.' "  ECF Dkt. #15 at 4 quoting *Lucas v. Michigan*, 420 F.2d 259, 262 (6th Cir. 1970).

The amended petition set forth the following grounds for relief:

| | |
|---|---|
| **GROUND ONE:** | The conviction was obtained with the admission of improper evidence. |
| **Supporting facts:** | The trial court allowed prejudicial evidence presented by the prosecution from Mr. Chris Jones and Ms. Cheryl Gearheart. Mr. Jones was permitted to enter test results from a Bashinski test that tested for lead; meanwhile, the prosecution used testing for gun shot residue with the recent scientific advancement used on the Petitioner's hands that place actual particle of GSR searching for barium, antimony and lead. |
| **GROUND TWO:** | The conviction was obtained when the petitioner was denied discovery concerning another suspect. |
| **Supporting facts:** | The Petitioner's pre-trial motion was filed to obtain discovery concerning the investigation of Richard Wise and how he was excluded from the homicide. An unsigned order was journalized with language the order is granted; however, the word "denied" is written across the bottom with no signature. |
| **GROUND THREE:** | The Conviction was obtained through the denial of counsel at two critical stage proceedings violating the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution. |
| **Supporting facts:** | The Petitioner was denied counsel at two critical stage proceedings during a pre-trial stage and during trial. The proceedings where held prior to the Petitioner's trial testimony unbeknown to the Petitioner and the record. The critical stage proceedings are silent in the record and could not have been presented on direct appeal. The evidence reviewed at these two |

---

[5]    Upon review of the documents attached to Respondent's Return of Writ, the undersigned is not aware of any particular order where Judge Curran declared Petitioner to be a vexatious litigator. *See* http://www.sconet.state.oh.us/Clerk/vexatious/ (last visited May 27, 2010) (reflecting only Judge Kimbler's order declaring Petitioner to be a vexatious litigator); *see also* §V.C., *infra*.  It appears that Judge Curran merely enforced Judge Kimbler's March 17, 2005 order.  ECF Dkt. #48 at 51.  Notably, Petitioner did not attach Judge Kimbler's order to his motion to reinstate the 2003 petition.  Therefore, Judge Economus most likely did not have notice of this issue when he granted Petitioner's motion to reopen the 2003 petition.  The undersigned discusses this issue in further detail in subsection VI.A.i., below.

critical stages where [sic] used to belligerently attack the Petitioner's credibility on cross-examination and closing when the Petitioner denied each occurrence that is now supported by the post trial evidentiary discovery. This false attack included accusing the Petitioner of coaching his son to lie at trial with no evidentiary support.

**GROUND FOUR:** The Conviction was obtained through the ineffective assistance of counsel violating the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution.

**Sub-Ground I** Trial counsel failed to suppress evidence from an unauthorized search and seizure of the Petitioner's residence and property on December I, 1999 and the Petitioner's vehicle in February of 2000.

**Supporting Facts:** Trial counsel failed to suppress evidence that was seized by the authorities without a search warrant and outside the limits of the consented search by the Petitioner at his residence.

**Sub-Ground II** Trial counsel failed to object against the uncounseled critical stage proceedings unbeknown to the Petitioner and record, supported by Judge Collier's sworn affidavit when the Petitioner was belligerently attacked by the prosecution during cross examination and closing argument.

**Supporting Facts:** Judge Collier averred in his May of 2003 sworn affidavit the uncounseled critical stage proceeding stemmed from defense counsel's objection that dehor the record.

**Sub-Ground III** Trial counsel failed to object during closing when the prosecution made comments verifying the credibility of state witnesses, discrediting the Petitioner and his son.

**Supporting Facts:** The prosecuting attorney based its closing, attacking the Petitioner's credibility and character claiming the lead detective and Carol Bozsik's biological brothers have no reason to lie against the Petitioner. This continued attack in closing arguably claimed the Petitioner coached his son to lie, since the Petitioner's son buttressed his statements concerning a blue truck that drove up and down the street on the morning of the homicide.

**Sub-Ground IV** Trial counsel failed to protect the Petitioner's Sixth Amendment right to effective assistance of counsel with the accumulated prejudice in the criminal case against the Petitioner.

**Supporting Facts:** Based on the finding offered before this Court are sub-claims that on its own merit might not justify relief; however, combined together the Petitioner has satisfied that relief is warranted

**GROUND FIVE:** Prosecutorial Misconduct

-18-

**Sub-Ground I:** The prosecution failed to correct false and misleading testimony that was known to the prosecuting attorney violating the Petitioner's right to a fair trial.

**Supporting Facts:** The lead investigator and key state witnesses testified to circumstantial facts known to the prosecution to be false and misleading. The false and misleading testimony created false innuendo of circumstantial events that was used discredit the Petitioner's credibility and to prevent a proper defense.

**Sub-Ground II:** The prosecution failed to disclosed exculpatory and impeachment evidence that was used to discredit the Petitioner's guilt with the jury when the prosecution claimed all evidence was disclosed to the defense through a March 22, 2000 discovery judgment by the trial court (Judge Collier).

**Supporting Facts:** Evidence was obtained by the lead investigator through a transcribed interview and a sworn statement that he was aware of the 9:29 a.m. phone call to the Petitioner's residence that would have provided the Petitioner an absolute alibi since the homicide occurred after 9:30 a.m. The prosecution also failed to disclose documentary items that supports the Petitioner's credibility supporting the lead investigator perjured his testimony.

**Sub-Ground III;** The prosecutor obtained a conviction based on improper comments to the credibility of a witness with personal belief the Petitioner is giving false and misleading evidence when the prosecution was aware or should have been awarethe [sic] Petitioner's testimony was accurate.

**Supporting Facts:** The prosecuting attorney bolstered the witness credibility during closing when the facts [sic]

**Sub-Ground IV:** The accumulative effect of the prosecutorial misconduct on itself might not support a conviction on its own, however, the accumulative affect justifies relief the prosecutor denied the Petitioner a fair trial.

**Supporting Facts:** Based on the finding offered before this Court are sub-claims that on its own merit might not justify relief; however, combined together the Petitioner has satisfied that relief is warranted.

**GROUND SIX:** Denial of Due Process

**Supporting Facts:** The Conviction was obtained when the Petitioner was denied to be present and participating at critical stages in the process that his counsel was denied to participate violating the Sixth Amendment of the United States Constitution.

**GROUND SEVEN:** Biased Trial Judge

**Supporting Facts:** Structural error occurred throughout the criminal process before Judge Collier disqualified himself from the case when he prejudiced the Petitioner with proceedings of bias leading to

-19-

his disqualification order issued on June 7, 2007, seven years after the conviction and trial.

**GROUND EIGHT:**   Cumulative Constitutional Errors

**Supporting Facts:**   The Conviction was obtained adopting the cumulative error doctrine, by an accumulation of due process errors which on there own might not support the Petitioner denied his right to a fair criminal proceeding and/or right to a fair trial but collectively would provide relief.

**GROUND NINE:**   Denied the right to Appeal

**Supporting Facts:**   The Petitioner was denied his right under the due process and equal protection clause in the Fourteenth Amendment when the trial court issued interlocutory orders and denied/dismissed the criminal litigation approved adopting the vexatious litigator statute prohibiting the right to appeal in the court of appeals and the Supreme Court of Ohio.

**GROUND TEN:**   Sufficiency of the Evidence - Actual Innocence

**Supporting Facts:**   After applying the new factual evidence to the trial's case-in-chief a miscarriage of justice occurred during the Petitioner's trial since the new evidence justifies the Petitioner is actually innocent of Carol Bozsik's homicide.

ECF Dkt. #12, Attach. 2.  On February 11, 2009, Petitioner filed a motion for leave to file a second amended petition, which the undersigned granted.  ECF Dkt. #22.  The second amended petition ("instant petition") is the petition before this Court.  ECF Dkt. #26.  The instant petition sets for the following grounds for relief:

**GROUND ONE:**   The conviction was obtained with the admission of improper evidence.

**Supporting facts:**   The trial court allowed prejudicial evidence presented by the prosecution from Mr. Chris Jones and Ms. Cheryl Gearheart.  Mr. Jones was permitted to enter test results from a Bashinski test that tested for lead; meanwhile, the prosecution used testing for gun shot residue with the recent scientific advancement used on the Petitioner's hands that place actual particle of GSR searching for barium, antimony and lead.

**GROUND TWO:**   The conviction was obtained when the petitioner was denied discovery concerning another suspect.

**Supporting facts:**   The Petitioner's pre-trial motion was filed to obtain discovery concerning the investigation of Richard Wise and how he was excluded from the homicide.  An unsigned order was journalized with language the order is granted; however, the word "denied" is written across the bottom with no signature.

-20-

**GROUND THREE:** The Conviction was obtained through the denial of counsel violating the Petitioner's due process and guaranteed right to counsel in the Sixth, and Fourteenth Amendment of the United States Constitution.

**Sub-Ground I:** The Petitioner is being held against his liberty without due process and the right to a fair trial when uncounseled and unrecorded critical stage proceedings where [sic] held reviewing evidence unbeknown to the Petitioner especially during his trial testimony.

**Supporting Facts:** The Petitioner is being held against his liberty from a conviction and/or sentence when the trial court held two uncounseled critical stage proceedings without a valid waiver in open court prior to proceeding with critical review of evidence that completely dehors the record.

**Sub-Ground II:** The Conviction was obtained with the denial of counsel at critical stages in the criminal proceedings violating the Petitioner's due process and right to counsel guaranteed by the United States Constitution.

**Supporting Facts:** The Petitioner was denied counsel at two critical stage proceedings during a pre-trial stage and trial stage that was not identified in the record. The proceedings where [sic] held prior to the Petitioner's trial testimony unbeknown to the Petitioner and the record. The critical stage proceedings are silent in the record and could not have been presented on direct appeal. The evidence reviewed at these two critical stages where [sic] used to attack the Petitioner's credibility on cross-examination and closing when the Petitioner denied each occurrence that is now supported by the post trial evidentiary discovery. This false attack included accusing the Petitioner of coaching his son to lie at trial with no evidentiary support.

**GROUND FOUR:** The Conviction was obtained through the ineffective assistance of counsel violating the Petitioner's due process and guaranteed right to counsel in the Sixth, and Fourteenth Amendment of the United States Constitution.

**Sub-Ground I:** Trial counsel failed to object and suppress evidence from an unauthorized search and seizure of the Petitioner's residence and property on December 1, 1999 through December 8, 1999 and the Petitioner's vehicle in February of 2000.

**Supporting Facts:** Trial counsel failed to motion for suppression of evidence illegally taken from the Petitioner's residence and property outside the limits of a consented search by the Petitioner. This improperly seized property was used by the prosecution to build a fabricated case against the Petitioner.

**Sub-Ground II:** Trial counsel failed to object against the uncounseled critical stage proceedings based on Judge Collier's sworn affidavits when the Petitioner was attacked by the prosecution during cross examination and closing.

-21-

**Supporting Facts:**   Judge Collier averred in his May of 2003 and April of 2005 sworn affidavit the uncounseled critical stage proceeding stemmed from defense counsel's objection that dehor the record.

**Sub-Ground III:**   Trial counsel failed to object during closing when the prosecution made comments verifying the credibility of state witnesses, discrediting the Petitioner and his son.

**Supporting Facts:**   The prosecuting attorney based its closing, attacking the Petitioner's credibility and character claiming the lead detective and Carol Bozsik's biological brothers have no reason to lie against the Petitioner. This continued attack in closing arguably claimed the Petitioner coached his son to lie, since the Petitioner's son buttressed his statements concerning a blue truck that drove up and down the street on the morning of the homicide.

**Sub-Ground IV:**   Trial counsel failed to protect the Petitioner's Sixth Amendment right to effective assistance of counsel with the accumulated prejudice in the criminal case against the Petitioner.

**Supporting Facts:**   Based on the findings offered before this Court are sub-claims that on its own merit might not justify relief; however, combined together the Petitioner has satisfied that relief is warranted

**GROUND FIVE:**   The Conviction was obtained by the prosecuting attorney's failure to protect the Petitioner's due process and all constitutional rights.

**Sub-Ground I:**   The prosecution failed to correct the false and misleading testimony that was known, or should have been known to the prosecuting attorney violating the Petitioner's right to due process and a fair trial.

**Supporting Facts:**   The lead investigator and key state witnesses testified to circumstantial events or facts known, or should have known to the prosecution to be false. misleading or perjury. The false and misleading testimony created false circumstantial events that was used discredit the Petitioner and his son's credibility.

**Sub-Ground II:**   The prosecution failed to disclosed [sic] exculpatory and impeachment evidence that was used to discredit the Petitioner's guilt with the jury when the prosecution claimed all evidence was disclosed to the defense through a March 22, 2000 discovery judgment by Judge Collier.

**Supporting Facts:**   Evidence was obtained by the lead investigator through a transcribed interview and a sworn statement that he was aware of the 9:29 a.m. phone call to the Petitioner's residence that would have provided the Petitioner an absolute alibi since the homicide occurred after 9:30 a.m. The prosecution also failed to disclose documentary items that supports the Petitioner's

-22-

credibility supporting the lead investigator perjured his testimony.

**Sub-Ground III:**    The prosecutor obtained a conviction based on improper comments to the credibility of a witness with personal knowledge or should have known the state witnesses gave false, misleading or perjured testimony.

**Supporting Facts:**    The prosecuting attorney bolstered the witness credibility during closing when the facts where [sic] false and misleading or perjured.

**Sub-Ground IV:**    The accumulative effect of the prosecutorial misconduct on itself might not support a conviction on its own, however, the accumulative affect justifies relief the prosecutor denied the Petitioner a fair trial.

**Supporting Facts:**    Based on the finding offered before this Court are sub-claims that on its own merit might not justify relief; however, combined together the Petitioner has satisfied that relief is warranted.

**GROUND SIX:**    The Conviction was obtained with the Denial of Due Process prohibiting the Petitioner his right to be present at all critical stages in the proceedings.

**Supporting Facts:**    The Conviction was obtained when the trial court infringed upon the Petitioner's right to be present and/or participating during uncounseled critical stages in the criminal process without a valid waiver. The knowledge and/or participation of these proceedings would have provided the Petitioner knowledge to adequately challenge the prosecution on cross-examination when the Petitioner's credibility was at stake.

**GROUND SEVEN:**    The Conviction was obtained with a biased trial judge confirmed by the trial judge's sua sponte disqualification order post trial.

**Supporting Facts:**    Structural error occurred throughout the criminal process before Judge Collier supported by his disqualification order from the case when he prejudiced the Petitioner with proceedings of bias leading to his disqualification order issued on June 7, 2007, seven years after the conviction and trial.

**GROUND EIGHT:**    The Petitioner was denied due process from the Cumulative Constitutional Errors

**Supporting Facts:**    The Conviction was obtained adopting the cumulative error doctrine, by an accumulation of due process errors which on there own might not support the Petitioner denied his right to a fair criminal proceeding and/or right to a fair trial but collectively would provide relief.

-23-

**GROUND NINE:**      The Petitioner was denied the right to Appeal his post trial litigation with the trial court

**Supporting Facts:**      The Petitioner was denied his right under the due process and equal protection clause in the Fourteenth Amendment when the trial court issued interlocutory orders and denied/dismissed the criminal litigation approved adopting the vexatious litigator statute prohibiting the right to appeal in the court of appeals and the Supreme Court of Ohio.

**GROUND TEN:**      Sufficiency of the Evidence does not support the conviction.

**Supporting Facts:**      After applying the new factual evidence to the trial's case-in-chief a miscarriage of justice occurred during the Petitioner's trial since the new evidence justifies the Petitioner is actually innocent of Carol Bozsik's homicide.

ECF Dkt. #26, Ex. C.  On April 6, 2009, Respondent filed a motion to dismiss the instant petition as a second or successive petition.  ECF Dkt. #27.  On August 11, 2009, the undersigned recommended that the Court find the instant petition to be a second or successive application under 28 U.S.C. § 2244 and transfer the instant petition to the Sixth Circuit Court of Appeals for further proceedings.  ECF Dkt. #41.  On October 14, 2009, Judge Economus rejected the report and recommendation insofar as it recommended finding the petition to be second or successive.  ECF Dkt. #45.  Judge Economus again referred the case to the undersigned to: "(1) [ ] determine which of Petitioner's claims relate back to the filing of his original 2003 habeas petition, and (2) for a determination on the merits of Petitioner's timely claims."  ECF Dkt. #45 at 18.

On December 23, 2009, Respondent filed a return of writ.  ECF Dkt. #48.  On March 12, 2010, Petitioner filed a traverse.  ECF Dkt. #56.  The undersigned notes that this case is assigned to the administrative track and the local rules limit the length of legal memoranda for dispositive motions to 20 pages, unless leave of court is sought.  *See* L.R. 7.1(f).  Although neither party has sought leave of court, Respondent has filed a 65 page brief and Petitioner has filed a 79 page brief. On March 26, without leave of court, Respondent filed a response to Petitioner's traverse.  ECF Dkt. #60; *see also* ECF Dkt. #46 (the revised briefing schedule did not provide for a sur-reply).

Petitioner has filed multiple motions, including: a motion to expand the record, a motion for an evidentiary hearing, a motion for discovery, motion for leave to object against incorrect and/or misleading facts in the warden's traverse, a motion to reconsider district court's order of October

-24-

14, 2009, and a motion for judicial notice.  ECF Dkt. #'s 57, 58, 59, 62, 63, 65.  On April 8, 2010, the undersigned issued an order directing the parties not to file any further documents without leave of the Court so that the pending pleadings could be considered and ruled upon and so that a report and recommendation could be issued.  ECF Dkt. #64.

## III.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).

Respondent contends that Grounds Three through Ten of the instant petition are time-barred and should be dismissed.  ECF Dkt. #48 at 30-34.

In general, a state prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must comply with the statute of limitations period set forth in 28 U.S.C. § 2244, which provides:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

-25-

> (d)(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts.  *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); *see* 28 U.S.C. § 2244(d)(2).  To determine if a state proceeding will toll the statute of limitations, the Sixth Circuit has held that:

> A state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question is not a review 'with respect to the pertinent judgment or claim' within the meaning of 28 U.S.C. § 2244(d)(2), and therefore does not toll the one-year AEDPA statute of limitations.

*Austin v. Mitchell*, 200 F.3d 391, 395 (6th Cir. 1999).  Further, the "tolling provision does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

The one-year statute of limitations under Section 2244 is subject to equitable tolling when a petitioner's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the petitioner's control.  *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).  The Sixth Circuit has stated that "federal courts sparingly bestow equitable tolling."  *Graham-Humphreys*, 209 F.3d at 560-61; *Jurado*, 337 F.3d at 642.  When determining whether equitable tolling is appropriate, the court must consider: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim."  *Dunlap*, 250 F.3d at 1008; *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002).  These factors are not comprehensive and not all of the factors are relevant in all cases.  *Cook*, 295 F.3d at 521.  Whether equitable tolling is appropriate is a case-by-case analysis.  *Id*.  The petitioner bears the ultimate

-26-

burden of persuading the court that he or she is entitled to equitable tolling.  *Vroman*,  346 F.3d at 605.

### B.       Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v.  Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

In *Harris v. Lafler*, the Sixth Circuit set forth the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528;

(2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) *citing Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

-28-

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id*. at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); Richey, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004). A state's res

-29-

judicata rule barring post-conviction claims which could have been raised on appeal is an adequate and independent ground for *Maupin* purposes. *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), cert. denied, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## IV.   STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

-30-

> (1)     resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.     Decisions of lower federal courts may not be considered.
>
> B.     Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C.     The state court decision may be overturned only if:
>
> > 1.     It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

-31-

2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced

-32-

because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.      PENDING MOTIONS

Petitioner has filed multiple motions that require the Court's attention:

### A.      Petitioner's Motion for Leave to Object Against Incorrect And/Or Misleading Facts in the Warden's Traverse Response ECF #60.  (ECF Dkt #62).

Petitioner seeks leave to object to allegedly incorrect or incomplete facts in Respondent's "Response to Traverse (ECF #60)."  ECF Dkt. #62.  The undersigned DENIES Petitioner's motion for the following reasons.  ECF Dkt. #62.

First, Respondent has filed its response to the traverse without seeking leave of Court. Accordingly, the undersigned hereby STRIKES Respondent's reply to Petitioner's traverse.  ECF Dkt. #60.  Further, Petitioner contends that "this Court <u>NEVER</u> ordered the parties, especially the Warden to address the relation back doctrine, but only the timeliness of the amended grounds."  ECF Dkt. #62 at 2 (emphasis in original).  Petitioner's argument is misplaced because Judge Economus' October 14, 2009 order clearly stated that the undersigned was to determine the issue of relation back on remand.  ECF Dkt. #45 at 15-18.  Judge Economus stated "The case is hereby REMANDED to the Magistrate Judge: (1) **to determine which of Petitioner's claims relate back to the filing of his original 2003 habeas petition**, and (2) **for a determination on the merits of Petitioner's <u>timely claims</u>**."  *Id*. at 18 (emphasis added); *see also* ECF Dkt. #63 (Petitioner acknowledges that Judge Economus ordered "the Magistrate Judge to apply the relations back doctrine. . .").  Accordingly, the undersigned ordered the parties to address "the timeliness of Petitioner's new claims."  ECF Dkt. #46.

The undersigned's use of the word "timeliness" was not an oversight as Petitioner contends. *See* ECF Dkt. #62 at 3. The undersigned chose broader language in ordering briefing on timeliness of the claims in order to address all potential statute of limitations issues. Particularly, Ground Nine sets forth an appeal-based claim, which may have a different AEDPA statute of limitations starting date than Petitioner's other claims pursuant to 28 U.S.C. §2244(d)(1)(D). *See McIntosh v. Hudson*, 632 F.Supp.2d 725, 733 (N.D.Ohio 2009) ("the predicate fact under § 2244(d)(1)(D) with regard to the appeal-based claims was the appellate state court's decision to deny a motion for delayed appeal, whereas the predicate facts with regard to the conviction-based claims were the failures by the trial court and counsel at sentencing."); *see also Pritchard v. Kelly*, No. 9:98-CV-0349, 2000 WL 33743378 at *4 (N.D.N.Y. 2000) (applying 28 U.S.C. § 2244(d)(1)(D) "Since the factual basis for Ground One of petitioner's claim could not have been complete until the Appellate Division issued its decision on Pritchard's application for a writ of error coram nobis, and petitioner filed this action the same month that such application was denied, the Court cannot find that this particular ground in Pritchard's habeas petition is time-barred."). Therefore, it may be timely even if it does not relate back to the 2003 petition. The undersigned chose the broader term "timeliness" to include both the relation back doctrine and the appeal-based claim. Incidentally, neither party has acknowledged that Ground Nine arises from a different factual basis than the balance of the petition.

Regardless, both the undesigned and Judge Economus stated that Petitioner's amended claims would be addressed from a statute of limitations standpoint. ECF Dkt. #45 at 18; ECF Dkt. #46. Further, Respondent addressed the issue in her return of writ, providing Petitioner an opportunity to respond. ECF Dkt. #48 at 30-34. Accordingly, Petitioner's assertion that he lacked notice regarding the relation back doctrine is without merit. In fact, Petitioner did not file the instant motion, ECF Dkt. #62, until after he filed his traverse. *Compare* ECF Dkt. #56 at 79 *with* ECF Dkt. #62 at 6 (reflecting filing dates). Accordingly, Petitioner's motion is DENIED. ECF Dkt. #62.

**B.     Motion to Reconsider District Court Order, Or, Correct Incorrect Facts with [ECF #45] On October 14, 2009 (ECF Dkt. #63).**

In this motion, Petitioner asks the Court to reconsider its order holding that his "amended

-34-

petition was filed after the statute of limitations expired, only those claims which relate back to the original date of filing may be heard on the merits." ECF Dkt. #63 at 6.  The undersigned fails to see how Petitioner can seek reconsideration of this ruling while claiming in ECF Dkt. #62 that he did not have notice that the relation back doctrine was at issue.

Regardless, the undersigned is of the opinion that Judge Economus must rule on ECF Dkt. #63 since Judge Economus entered the order that Petitioner seeks to have reconsidered.  However, Petitioner filed the motion without page numbers as the local rules require.  *See* L.R. 10.1.  In order to assist Judge Economus' review, the undersigned hereby STRIKES ECF Dkt. #63 and instructs Petitioner to file a conforming brief.

Notwithstanding the foregoing, the undersigned will address the substance of ECF Dkt. #63 on a report and recommendation basis.  Petitioner contends that it was improper for the Court to address the statute of limitations because Respondent did not address the issue in her motion to dismiss.  ECF Dkt. #63 at 6.  Petitioner contends that, "At the moment this Court determined Bozsik's 2003 petition was not filed subsequent to the 2006 petition, this Court should have stopped its review."  *Id*.  Petitioner cites no authority for this proposition.  However, the undersigned notes that the United States Supreme Court has held that "district courts are permitted . . . to consider, sua sponte, the timeliness of a state prisoner's habeas petition."  *See Day v. McDonough*, 547 U.S. 198, 209 (2006).

Judge Economus merely defined the scope of issues remaining to be determined.  Judge Economus' order explains that the 2003 petition was stayed, and only the claims contained therein and claims that relate back to that petition are timely.  Petitioner appears to take the position that because he filed *a petition* in 2003 that the Court stayed, he has been granted free leave to pursue any claims he now desires.  Petitioner's brief ignores that fact that Judge Nugent  has already determined that many of the new claims Petitioner now raises were time-barred in 2006.  *See* §IV(C), *infra* (comparing instant petition to 2006 Petition).  Since the new claims were not before Judge Matia in 2003, when Judge Economus converted the 2003 dismissal into a stay, his order only related to the five grounds contained in the 2003 petition and claims that may relate back.  *See Mayle v. Felix,* 545

-35-

U.S. 644, 654-55 (2005).

To the extent that Petitioner contends Respondent has waived the AEDPA statute of limitations by not objecting to amendments of the petition, the undersigned notes that Respondent has specifically raised a statute of limitations defenses in her return of writ and in the 2006 case, when Petitioner raised many of the same claims that he has presented in the instant petition. *See* ECF Dkt. #63 at 6 (Petitioner's motion addressing waiver: "this Court addressed the statute of limitations with the amended grounds when it was not addressed by the Warden in her motion to dismiss").  And again, the Court may address the statute of limitations sua sponte.  *Day*, 547 U.S. at 209.

Accordingly, should Petitioner refile a motion similar in content to ECF Dkt. #63, the undersigned recommends that the Court deny it.

### C.      Discovery Motions  ECF Dkt. ## 57, 58, 59, 65

Petitioner has filed various discovery motions.  Respondent has opposed these motions, but her response does not include page numbers.  *See* L.R. 10.1.  **Due to the volume of the pleadings in this case, the parties are specifically reminded to comply with L.R. 10.1 in the future.**

Petitioner has requested that Respondent produce: his August 12, 2003 Post Conviction Motion for New Trial that he filed in the trial court; the direct appeal record from the Supreme Court of Ohio related to the direct appeal from a state habeas corpus petition filed in Richland County, Ohio; his June 1, 2007 post conviction petition, supplements, and all exhibits; and his August 4, 2008 motion for leave to file a new trial.  ECF Dkt. #57.  Respondent opposes Petitioner's motion, contending that Habeas Rule 5 requires Respondent to provide only briefs submitted in an *appellate* court.  ECF Dkt. #61 at 4 (emphasis in original).

The undersigned is reluctant to grant Petitioner's motion because he filed it contemporaneously with his traverse.  He should have requested the discovery before filing his traverse.  Further, the undersigned does not believe that the evidence Petitioner seeks is necessary for the disposition of this case, as the balance of this report and recommendation demonstrates. Nevertheless, the undersigned will address this motion to assist Judge Economus in adjudicating this

-36-

matter.

Rule 5 of the Rules Governing §2254 Cases provides in full:

**(a) When Required.** The respondent is not required to answer the petition unless a judge so orders.

**(b) Contents: Addressing the Allegations; Stating a Bar.** The answer must address the allegations in the petition. In addition, it must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations.

(**c**) **Contents: Transcripts**. The answer must also indicate what transcripts (of pretrial, trial, sentencing, or post-conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed. The respondent must attach to the answer parts of the transcript that the respondent considers relevant. The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished. If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence.

**(d) Contents: Briefs on Appeal and Opinions.** The respondent must also file with the answer a copy of:

(1) any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding;

(2) any brief that the prosecution submitted in an appellate court relating to the conviction or sentence; and

(3) the opinions and dispositive orders of the appellate court relating to the conviction or the sentence.

**(e) Reply.** The petitioner may submit a reply to the respondent's answer or other pleading within a time fixed by the judge.

Rules Governing § 2254 Cases in the United States District Courts ("Rules Governing § 2254 Cases"), Rule 5.

Rule 7 of the Rules Governing § 2254 Cases provides in full:

**(a) In General.** If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge

-37-

may require that these materials be authenticated.

   **(b) Types of Materials.** The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

   **(c) Review by the Opposing Party.** The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Rules Governing § 2254 Cases, Rule 7.

   As stated above, the undersigned finds none of these records to be relevant or necessary to the disposition of this case. Therefore, the undersigned will not order expansion pursuant to Rule 7. Further, most of the documents Petitioner seeks are not briefs that he submitted to an appellate court that must be produced pursuant to Rule 5.

   First, Petitioner seeks a copy of an August 12, 2003 Post Conviction Motion for New Trial. ECF Dkt. #57 at 4. Petitioner contends that Respondent has opened the door to this issue because she has included the appellate court's entry ruling on an appeal from the trial court's ruling on the motion. *Id.* citing ECF Dkt. #48, Ex. 69. However, Petitioner is not seeking an appellate brief, and Rule 5 does not apply. Therefore, Petitioner's request is denied.

   Next, Petitioner seeks a copy of the record pertaining to an appeal to the Supreme Court of Ohio in connection with a state habeas petition. ECF Dkt. #57 at 4. Habeas Rule 5(d)(1) clearly requires Respondent to file "any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding". Rules Governing § 2254 Cases, Rule 5(d)(1), (d)(2); *see Flamer v. Chaffinch*, 774 F.Supp. 211, 219 (D.Del.,1991) ("Habeas Rule 5 speaks in mandatory terms, stating what must be attached to the answer. . ."). Thus, Respondent must file Petitioner's brief related to his appeal to the Supreme Court of Ohio in connection with a state habeas petition.

   Petitioner seeks a copy of a June 1, 2007 post conviction petition, supplements, and exhibits. ECF Dkt. #57 at 5. Lastly, Petitioner seeks a copy of an "August 4, 2008 Motion for Leave to File

a New Trial" and all Exhibits.  ECF Dkt. #57 at 6.  Again, these are not appellate briefs, and the undersigned does not find them necessary to the disposition of this case.  Therefore, these documents need not be produced pursuant to Rule 5 or Rule 7.  Therefore, Petitioner's requests are denied.

Given the foregoing, the undersigned GRANTS Petitioner's motion (ECF Dkt. #57) with respect to records pertaining to an appeal to the Supreme Court of Ohio in connection with a state habeas petition (Item #2 in Petitioner's motion).  The undersigned will DENIES Petitioner's motion with respect to items #1, #3, and #4 in Petitioner's motion.

After discussing the foregoing requests, Respondent contends that "Bozsik **then requests several documents, nineteen in total**, in order to expand the record."  ECF Dkt. #61 at 5 (emphasis added).  Respondent appears to have misunderstood Petitioner's motion because Petitioner has attached 19 exhibits to his motion to expand the record and has not asked Respondent to furnish these documents.  Although Respondent contends that Petitioner has made no showing of relevance, and the undersigned generally agrees, the undersigned will admit Exhibits A-Q, S-T to the record because doing so would impose no burden on Respondent or the Court.  Accordingly, these exhibits are admitted to the record.  ECF Dkt. # 57 Ex. A-Q, S- T.

Next, Petitioner seeks an evidentiary hearing pursuant to Rule 8 of the Rules Governing § 2254 Cases.  ECF Dkt. #58.  Again, the undersigned notes that the length of this motion exceeds the general 15-page limit for motions.  *See* L.R. 7.1(f) ("Memoranda relating to all other motions must not exceed fifteen (15) pages in length.").  After an exhaustive discussion of state law (*see* ECF Dkt. #58 at 1-19), Petitioner states that he seeks an evidentiary hearing pertaining to "Amended Ground Three, Amended Ground Four, Amended Ground Five, Amended Ground Six, and Amended Ground Seven."  ECF Dkt. #58 at 19-20.  Petitioner then only offers an explanation pertaining to the purported necessity of a hearing on Grounds Three, Five, and Six.  *See* ECF Dkt. #59 at 20-30.

The district court shall not hold an evidentiary hearing if the Petitioner has failed to develop the factual basis of his claim in the state court, unless the petitioner shows that:

> (A) the claim relies on—
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  In order to determine whether a petitioner failed to develop the factual basis for his claim, the district court must determine whether there was a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  "Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful."  *Id.* at 435.

A district court may hold an evidentiary hearing if the petitioner did not fail to develop the facts in state court.  *Williams*, 529 U.S. at 433.  However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 1940 (2007).  Further, "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing."  *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) cert. denied, 127 S. Ct. 1877 (2007), quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Petitioner seeks an evidentiary hearing to clarify whether the trial judge conducted an ex parte critical stage proceeding.  ECF Dkt. #58 at 20-21.  The record clearly indicates that the trial judge did not conduct an ex parte proceeding.  *See discussion* at § VI.B.iii., *infra*.  Rather, he conducted an in camera review of material that defense counsel requested during discovery.  *See* ECF Dkt. #48,

-40-

Ex. 36 (Ex. B).

Petitioner also offers a lengthy explanation detailing his efforts to obtain an evidentiary hearing at the state level, but his arguments are not compelling. *See* ECF Dkt. #58 at 1-20. However, Petitioner then lists multiple pieces of evidence pertaining to Ground Five, which allegedly require witness testimony for authentication. *See* ECF Dkt. #58 at 22-24. Petitioner has not demonstrated that he made an effort to obtain affidavits to authenticate the records while his case was pending in the state courts. Nevertheless, the Court can rule upon the instant petition without considering the evidence to which Petitioner cites on pages 22-24 because Ground Five is most likely time-barred, as discussed below. *See discussion* at § VI.A, *infra*.

In this case, there is no need for an evidentiary hearing on Grounds Three, Four, Five, Six, and Seven. Petitioner raised several of these claims in his 2006 Petition and Judge Nugent determined that they were time-barred. Even though Judge Economus has held that the instant petition was not successive to the 2006 petition, that holding was based on the premise that the 2003 claims were stayed. *See* ECF Dkt. #45 at 15. That being said, the undersigned notes that Judge Economus granted leave to reopen the 2003 petition only under the authority of equitable tolling. *See* ECF Dkt. #15 at 5. Equitable tolling applied only to the claims raised in the 2003 petition, not to every conceivable claim that Petitioner could include on amending his petition when the case was reopened in 2008. Thus, the claims that Judge Nugent determined to be time-barred in 2007 remained time-barred when Judge Economus reopened the instant case in 2008. Several of the claims for which Petitioner seeks an evidentiary hearing are the same as the claims that Judge Nugent found to be time-barred, specifically:

> Ground Three of the instant petition raises a claim based upon the same factual basis as Ground Four[6] of the 2006 petition;
>
> Ground Five of the instant petition raises the same claims as Grounds One , Two, and

---

[6] Ground Three, Sub-Ground I of the instant petition corresponds to the second Ground Four in the 2006 petition and Ground Three, Sub-Ground II of the instant petition corresponds to the first Ground Four in the 2006 petition. *Compare* ECF Dkt. #26, Ex. C. *with* ECF Dkt. #1 at C5 (Case No. 1:06CV978).

-41-

Five of the 2006 petition; and

Ground Six of the instant petition raises a claim based upon the same factual basis as Ground Four of the 2006 petition.

*Compare* ECF Dkt. #26 *with* ECF Dkt. #1 (Case No. 1:06CV978).  And, as discussed below, the undersigned recommends that the Court dismiss Grounds One through Eight and Ten as time-barred.  Thus, no evidentiary hearing is necessary.  Accordingly, the undersigned DENIES Petitioner's motion.  ECF Dkt. #58.

Next, Petitioner seeks discovery pursuant to Rule 6 of the Rules Governing §2254 Cases.  ECF Dkt. #59.  Rule 6 provides, in part:

> **(a) Leave of Court Required.** A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

> **(b) Requesting Discovery.** A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

Rules Governing § 2254 Cases, Rule 6(a),(b).

Petitioner requests the following discovery:

1.  prosecution files including, but not limited to, the Medina County Prosecutor's Office files for the trial, appellate, post-conviction, and other litigation, police, BCI, and other law enforcement agencies' investigative files, medical/pathologist files of the victims, voice stress analysis and/or polygraph examination files, including but not limited to, the statements, raw data, test results, reports, audio or video tapes of the tests, pertaining to the prosecution of Steven A. Bozsik.

2.  Prosecution records of the recorded phone conversations held between Bozsik and his children from the Medina County Jail when he allegedly coached his son to lie on the witness stand.

ECF Dkt. #59 at 3-4.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley,* 520 U.S. 899, 904 117 S.Ct. 1793, 1196-97

-42-

(1997). "Thus, . . the 'broad discovery provisions' of the Federal Rules of Civil Procedure did not apply in habeas proceedings." *Id*. After the promulgation of the Rules Governing § 2254 cases, the "federal procedural rules permit discovery 'for good cause.' " *District Attorney's Office for Third Judicial Dist. v. Osborne*, ___ U.S. ___, 129 S.Ct. 2308, 2321 (2009).

Here, Petitioner has made no showing as to the necessity of the discovery sought. *See* ECF Dkt. #59 at 3-4. He simply identifies the materials he wishes to obtain. *Id*. Moreover, as discussed above, the evidence he seeks appears to relate to the merits of his claims, which are time-barred, as discussed below. Accordingly, his motion is DENIED. ECF Dkt. #59.

Lastly, Petitioner filed a Motion for Judicial Notice, And Or In the Alternative, a Show Cause Order to the Warden. ECF Dkt. #65. Petitioner seeks judicial notice of several items. *Id*. at 2-3.

Federal Rule of Evidence 201 provides, in part, that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, if a party fails to establish the relevance of the evidence sought, the district court may properly decline to take judicial notice. *Cox v. Tennessee Valley Authority*, 989 F.2d 499, 1993 WL 72488 at *6 (Mar. 15, 1993), unreported.

Petitioner first seeks judicial notice of the dockets Medina County Court of Common Pleas cases 99-CR-0446 and 04-CIV-0286. ECF Dkt. #65 at 2-3. Petitioner only explains that Respondent "ignor[ed] vital state court proceedings in her responsive pleadings when calculating the AEDPA one-year state of limitations, exhaustion and procedure [sic] default. These facts have significant bearing with the case at bar; otherwise, Bozsik will be prejudiced without these state court proceedings identified." ECF Dkt. #65 at 3. Petitioner has failed to establish what "proceedings" Respondent ignored. Further, Petitioner has not specifically identified a proceeding that the docket will reflect which is not otherwise shown in this Court's record. Therefore, the undersigned will not take judicial notice of the dockets Medina County Court of Common Pleas cases 99-CR-0446 and 04-CIV-0286 based on their purported ability to identify "vital state court proceedings."

Nevertheless, with respect to Medina County Case Number 99-CR-0446, Petitioner contends that the docket reflects that he filed various motions.  ECF Dkt. #65 at 3.  The undersigned will take judicial notice of the docket in Medina County Case Number 99-CR-0446 because Petitioner has specifically identified docket entries that may be relevant to the issue of the statute of limitations. *available at* http://www.co.medina.oh.us/medct_epublicnodr/pages/search.aspx ; *see Ashipa v. Warden, Chillicothe Correctional Inst.*, No. 1:08XC879, 2009 WL 3152840 at *3 (S.D.Ohio Sept. 30, 2009) (taking judicial notice of on-line docket records available to the public via the internet). However, the undersigned will let the docket speak for itself and gives no weight to Petitioner's characterization of the docket entries.  ECF Dkt. #65 at 3.

Next, Petitioner seeks judicial notice of the Ohio vexatious litigator report.  ECF Dkt. #65 at 3-4.  Petitioner contends that the report contains the trial court order that declared him to be a vexatious litigator.  *Id*.  The judgment entry contained on the Supreme Court of Ohio's website is the same document as ECF Dkt. #48, Ex. 51.  *See* http://www.sconet.state.oh.us/Clerk/vexatious/ (last visited May 27, 2010).  Although, the evidence Petitioner seeks judicial notice of is already in this Court's record, the vexatious litigator report is probative because it shows that Judge Kimbler issued the order declaring Petitioner to be a vexatious litigator.  The vexatious litigator report does not show any order entered by Judge Curran declaring Petitioner to be a vexatious litigator.  *See discussion infra,* §VI.a.i.  Therefore, his motion is granted with respect to the vexatious litigator report.

Accordingly, Petitioner's motion for judicial notice is GRANTED IN PART and DENIED IN PART.  ECF Dkt. #65.

## VI.    PETITION ANALYSIS

As an initial matter, the undersigned notes that Respondent analyzes both "Amended Grounds" and "Original Grounds" in her return of writ.  *See, e.g.,*  ECF Dkt. #48 at 30, 39.  When Petitioner amended his petition, he *replaced* the original petition with the amended petition.  *See Florida Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, n. 2 (1982) ("It is the complaint which defines the nature of an action, and once accepted, **an amended complaint**

-44-

**replaces the original**.") (emphasis added); *Parnell v. West*, 114 F.3d 1188 (Table), 1997 WL 271751 at *3 (6th Cir. 1997) (holding that a claim was abandoned when it was not stated in an amended complaint); *Seid v. Scutt,* No. 08-14198, 2010 WL 778284 at *2 (E.D.Mich., Mar. 4, 2010), slip op. Even though the amended grounds may contain the same (or similar) arguments as some of the original grounds, there is no indication in the instant petition that Petitioner sought to incorporate the original grounds by reference or maintain them.  In fact, the 79-page traverse offers no substantive argument pertaining to those grounds.  *See* ECF Dkt. #56 at 22-79  Therefore, Respondent's reference to "Original Grounds" causes unnecessary confusion.  The undersigned will refer only to the grounds in the instant petition.

     **A.**       **STATUTE OF LIMITATIONS**

       **i.**       **Reconsideration of Reopening Petition: Grounds 1-8, 10**

The undersigned recommends that the Court reconsider its order of December 16, 2008.  ECF Dkt. #15.  In that order, the Court applied equitable tolling, finding: "In declaring Bozsik to be a 'vexatious litigator,' Judge Curran effectively prohibited Bozsik from seeking any further relief in state court."  *Id*. at 4.  However, when Petitioner moved the Court to reopen the 2003 petition, he did not furnish the Court with either of the state court orders finding him to be a vexatious litigator.  *See* ECF Dkt. #11; *see also* ECF Dkt. #48, Ex. 51 at 5; Ex. 76.  Based on the exhibits filed with Respondent's return of writ, which were not available to the Court when it filed its December 16, 2008 order, the undersigned recommends that the Court reconsider its December 16, 2008 order.  A review of these documents demonstrates that: Petitioner failed to properly present his claims to the state court within 30 days of the federal court's dismissal; and Petitioner failed to return to federal court within 30 days of exhausting available state court remedies.  Thus, Petitioner's lack of exhaustion should not be excused.

Before analyzing the issue in further detail, the undersigned acknowledges that neither party has raised this issue, but the undersigned reiterates that "district courts are permitted . . . to consider, sua sponte, the timeliness of a state prisoner's habeas petition."  *Day*, 547 U.S. 209 (2006).

Returning to the facts at hand, Judge Matia's order of dismissal raises a question as to how Petitioner's claims remained unexhausted.  *See* ECF Dkt. #5.  Judge Matia stated:

> Because the petition raises issues on which petitioner has yet to fully exhaust state court remedies, it is subject to the rule of *Rose v. Lundy*, 455 U.S. 509 (1982),that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims. [footnote omitted]." *Id.* at 522.
>
> Accordingly, pursuant to Rule 4 of the Rules Governing Section 2254 Cases, this action is dismissed without prejudice.

ECF Dkt. #5 at 2.  Judge Matia did not specifically identify which grounds were unexhausted or why they were unexhausted.  *Id.*  Therefore, a question exists as to how Judge Matia determined that the 2003 petition contained unexhausted claims.

To satisfy the exhaustion requirement, a petitioner must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (6th Cir. 1999).  "Comity, . . .dictates that [a petitioner] use the State's established appellate review procedures before he presents his claims to a federal court." *Id.*   "The fair presentation requirement is not satisfied when a claim is presented in state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley,* 87 F.3d 1315 (Table), 1996 WL 266421 at *2. (6th Cir. May 17, 1996) citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

By the time Petitioner filed the 2003 Petition, he had already completed a round of direct appeals.  *See* ECF Dkt. #48, Ex. 3-11.  Giving Petitioner the benefit of the doubt, it appears that Petitioner raised the grounds for relief contained in the 2003 petition on direct appeal.  The following chart shows the correlation of Petitioner's claims on direct appeal with his claims in the 2003 petition:

-46-

| 2003 Federal Petition | | Direct Appeal |
|---|---|---|
| **Ground One:** | Conviction was obtained by biased jury denying the Trial Court's instructions prior to deliberations. | Claim 2: THE DEFENDANT-APPELLANT'S CONVICTIONS ARE IN ERROR AS THE JURY RENDERED VERDICTS ON BOTH AGGRAVATED MURDER AND MURDER CONTRARY TO THE INSTRUCTIONS GIVEN BY THE COURT. |
| **Supporting facts:** | The trial court instructed the jury that if a guilty plea was obtained they must suspend there [sic] deliberations; however, if a guilty plea cannot be decided on Count I the jury must then proceed to Count II murder otherwise the Defendant must be foung [sic] Not Guilty. | *see* ECF Dkt. #48, Ex. 4 at 25-27. |
| | From the fraud presented before the trial court's jury, the jury returned guilty verdict to both counts violating the trial courts instructions. | |
| **Ground Two:** | Conviction was obtained without the Trial Court instructing the Jury of the lesser included offense of Manslaughter considering the State presented evidence supporting the offense. | Claim 3: THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON A LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER.<br><br>*see* ECF Dkt. #48, Ex. 4 at 27-28. |
| **Supporting Facts:** | The State presented false evidence the petitioner had a temper and it was insinuated with bald assertion that patitioner [sic] was capable of committing the crime from his anger control. | |

| Ground Three: Conviction was obtained by the trial court violating petitioners due process admitting improper evidence. | Claim 4: THE TRIAL COURT ERRED IN THE ADMISSION OF IMPROPER EVIDENCE. |
|---|---|
| Supporting Facts: The State presented evidence upon which is improper due to 1) The testimony of Cheryl Gerhaert was improper because it shows no motive to the crime; and 2) The testimony of Curtis Jones was prejudicial because the "scientific test" is not respected in the scientific community for Gun Shot Residue. | *see* ECF Dkt. #48, Ex. 4 at 28-31 (challenging admission of Gerhaert's testimony and Jones' testimony) |
| Ground Four: Conviction Was obtained in violation of Discovery and Crim. R. 16 | Claim 5: THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO COMPEL DISCOVERY WITH REGARD TO INFORMATION OBTAINED IN INVESTIGATING A SUSPECT OTHER THAN DEFENDANT-APPELLANT IN THE MURDER. |
| Supporting Facts: The investigation involving the homicide revealed two probable suspects and the trial court denied a specified discovery request of the petitioner reviewing the investigation of the other suspect.  The trial court denies the discovery request violating the petitioners due process of law rights by the state. | *see* ECF Dkt. #48, Ex. 4 at 31-33. |
| Ground Five: Conviction was obtained in violation of Petitioners Sixth Amendment Rights to Effective Assistance of Counsel | Claim 6: THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO COMPEL DISCOVERY WITH REGARD TO INFORMATION OBTAINED IN INVESTIGATING A SUSPECT OTHER THAN DEFENDANT-APPELLANT IN THE MURDER. |
| Supporting Facts: Counsel was ineffective by not objecting to critical trier of facts; in addition, not filing proper motions during trial. | *see* ECF Dkt. #48, Ex. 4 at 33-34. |

*Compare* ECF Dkt. #1 *with* ECF Dkt. #48, Ex. 4.  Notably, if Petitioner did fail to raise claims in the 2003 petition on his direct appeal, he was obligated to present those claims on direct appeal or

-48-

delayed appeal following Judge Matia's 2003 dismissal in order to properly exhaust state court remedies.  *See O'Sullivan*, 526 U.S. 845.  To the extent that Petitioner failed to do so, equitable tolling should not apply.

Since it appears that Petitioner did invoke a complete round of direct appeals, the question becomes "why did Judge Matia find the 2003 petition to contain unexhausted claims?"  The answer to that question is easily ascertainable by examining the attachments to the return of writ.  At the time Judge Matia dismissed the 2003 petition, Petitioner had a pending petition to vacate or set aside his sentence pursuant to O.R.C. § 2953.21 in the Medina County Court of Common Pleas.

In *Cox v. Cardwell*, 464 F.2d 639, 644, (6th Cir. 1972), the Sixth Circuit Court of Appeals held that a pending petition to vacate or set aside a sentence pursuant to O.R.C. § 2953.21 constituted grounds for dismissing a petition as unexhausted, reasoning that the petitioner had remaining state court remedies available:

> The aforesaid motion to vacate sentence had been filed before, and was still pending in, the Common Pleas Court on August 28, 1969, when the petition for habeas corpus was filed. Thus petitioner *had not exhausted remedies still available to him*. It also appears that prior to employment of the post-conviction remedy provided by Section 2953.21 of the Ohio Code, Cox had, on September 25, 1967, filed a motion for leave to appeal to the Court of Appeals for the Second District. This motion was also pending when the petition for habeas corpus relief was filed in the District Court. Thus there were two remedies still to be processed in the Ohio court when the petition was filed in the District Court.

*Cox*, 464 F.2d at 644 (emphasis in original).

The 2003 petition contained at least two claims that were nearly identical to grounds Petitioner raised in the state court petition to vacate. As the following chart shows, Ground Four of the 2003 petition raised the same claim as Claim IV of the petition to vacate and Ground Five of the 2003 petition raised the same claim as Claim IX of the petition to vacate:

| 2003 Federal Petition | State Petition to Vacate |
| --- | --- |

| Ground Four: | Conviction Was obtained in violation of Discovery and Crim. R. 16 | THE PETITIONER WAS DENIED HIS DUE PROCESS OF LAW BY THE STATE, VIOLATED THE REQUIREMENTS IN CRIMINAL RULE 16, WHEREBY THE EXCULPATORY EVIDENCE WAS NOT DISCLOSED AS REQUIRED: EVEN WHEN, THE DEFENDANT SPECIFICALLY REQUESTED THE UNDISCLOSED EVIDENCE. |
|---|---|---|
| Supporting Facts: | The investigation involving the homicide revealed two probable suspects and the trial court denied a specified discovery request of the petitioner reviewing the investigation of the other suspect.  The trial court denies the discovery request violating the petitioners due process of law rights by the state. | |
| Ground Five: | Conviction was obtained in violation of Petitioners Sixth Amendment Rights to Effective Assistance of Counsel | THE PETITIONER WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. |
| Supporting Facts: | Counsel was ineffective by not objecting to critical trier of facts; in addition, not filing proper motions during trial. | "To find constitutional [sic] defective performance, this Court must believe that the failure to object to the slandering and mockery comment about Brandin Bozsik and petitioner's testimony without any evidence prejudiced the petitioner. . . defense counsel Burden of Jack should have objected to the slander and mocking the state continued to exhibit when the true facts or any evidence was never brought forward." (at 65-66). |

*Compare* ECF Dkt. #1 *with* ECF Dkt. #48, Ex. 18 at 51-52, 64-68.  Because at least one of the claims that Petitioner raised in the 2003 Petition were pending before the state court on the petition to vacate, Judge Matia was required to dismiss the 2003 petition as unexhausted pursuant to *Rose*.  *See Rose v. Lundy*, 455 U.S. 509 (1982) (*mandating* dismissal of "mixed petitions" at the time of Judge Matia's decision); *Rhines v. Weber,* 544 U.S. 269, 125 S.Ct. 1528 (2005) (later abrogating *Rose's* mandatory dismissal rule).

Following Judge Matia's dismissal, the Ninth District Court of Appeals found that Petitioner had improperly filed his appeal, struck his brief and imposed a new filing date.  *See* ECF Dkt. #48, Ex. 22.  Petitioner would be entitled to mandatory equitable tolling if he promptly returned to state

-50-

court within 30 days of the federal court's dismissal and returned to federal court within 30 days of exhausting state court remedies (the "*Palmer* rule"). *Griffin v. Rogers*, 399 F.3d 626, 361 (6th Cir. 2005).

In this case, Petitioner failed to comply with the appellate court's clear deadline, and the court dismissed his appeal. ECF Dkt. #48, Ex. 23-29. Petitioner's failure to comply with the deadline could be construed as a failure to promptly return to the state court because he did not properly present his constitutional claims. Nevertheless, Petitioner appealed the appellate court's dismissal of his petition and continued to litigate the issue until the Supreme Court of Ohio declined to exercise jurisdiction on August 4, 2004. *See* ECF Dkt. #48, Ex. 18-35. Therefore, even if Petitioner properly returned to state court following Judge Matia's dismissal, a serious question exists as to whether he promptly returned to federal court upon exhausting his state court remedies.

The undersigned recommends that the Court find that Petitioner exhausted his state court remedies on August 4, 2004 because that is when he completed all appeals in connection with his petition to vacate his sentence. *See Cox*, 464 F.2d at 644.

Accordingly, the ultimate question for exhaustion purposes becomes whether Petitioner's promptly returned to federal court as equitable tolling requires. *See Griffin*, 308 F.3d at 652. On review of the exhibits attached to the return of writ, the undersigned recommends that the Court find that Petitioner has not promptly returned to federal court. The filings Petitioner made between August 4, 2004 and 2008 (when Judge Economus reopened the 2003 petition)[7] did not properly challenge the constitutionality of Petitioner's conviction.

Petitioner attempts to divert the issue by arguing that vexatious litigator orders prevented him from presenting constitutional claims. But he had already exhausted his constitutional claims over a year before Judge Kimbler declared him to be a vexatious litigator. *See* ECF Dkt. #48, Ex. 51. He could have easily returned to federal court without the vexatious litigator orders becoming an issue.

---

[7]     Even giving Petitioner the benefit of the doubt and considering the earlier of his two motions to reinstate his habeas petition, his motion filed on July 3, 2008 was well beyond the 30 day filing window for returning to federal court. *See* ECF Dkt. #9.

The undersigned is of the opinion that Petitioner has made the vexatious litigator orders an issue by filing numerous motions that were unnecessary to exhausting his state court remedies. Those motions include: a motion of a new trial, a motion for contempt, a state court motion for habeas corpus (filed in 2006, well after the 2004 petition to vacate was fully litigated), a petition for a writ of prohibition, and two petitions for writs of mandamus. *See, e.g.,* ECF Dkt. #48, Ex. 12-17, 36-50, 53-55, 68-80.  These motions are not part of the State's established appellate review procedures for presenting federal constitutional claims. *O'Sullivan*, 526 U.S., 845.  The exception to the foregoing statement could be Ohio's habeas petition.  However, unlike §2254 petitions, in Ohio, "[a]s a general proposition, a writ of habeas corpus will lie only when the prisoner can show that his incarceration is predicated upon a judgment rendered by a trial court which did not have proper jurisdiction over the criminal matter." *State ex rel. Dothard v. Warden*, No. 2002-T-0145, 2003 WL 169189 at *2 (Ohio App. 11 Dist. Jan. 24 2003), unreported; *see also* O.R.C. 2725.05; *In re Burson*, 89 N.E.2d 651, 383-84 (Ohio 1949) (holding that an appeal is the appropriate avenue for challenging a judgment entered by a court of competent jurisdiction, and "habeas corpus does not lie"); ECF Dkt. #48, Ex. 54 at 1-2.

Even if Plaintiff's state habeas petition is construed as an appropriate attack on the constitutionality of his conviction, as noted above, Petitioner filed that petition well after he should have returned to federal court (30 days after August 4, 2004).  Therefore, the motions that Petitioner filed did  not constitute a procedurally appropriate manner that would render consideration of the merits of his constitutional claims likely.  *See Black*, 1996 WL 266421 at *2.  The motions Petitioner filed in this case are more appropriately characterized as an abusive use of federal court authorization to return to state court for the limited purpose of diligently exhausting federal constitutional remedies.  *See Griffin*, 308 F.3d. 652 (a dismissal "permits" exhaustion but requires "diligence in exhausting state remedies and returning to federal court.").

Petitioner should not be entitled to equitable tolling because he remained in state court for nearly the next four years before seeking to reopen his 2003 petition.[8]  Therefore, on review of the exhibits attached to the return of writ, the undersigned recommends that the Court reconsider its application of equitable tolling to Petitioner's case.  ECF Dkt. #15.

Should the Court still reach the propriety of the vexatious litigator orders, the undersigned offers the following analysis.  The Sixth Circuit has observed that courts have several inherent and implied powers from the nature of their institution.  *In re Prevot*, 59 F.3d 556, 565 (6th Cir. 1995) citing *U.S. v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812).  Those powers include "a wide range of tools to promote efficiency in their courtrooms and to achieve justice in their results." *Prevot*, 59 F.3d at 565 quoting  *Eash v. Riggins*, 757 F.2d 557, 561 (3d Cir.1985) (en banc).   More specifically, "[a] court has the inherent power to manage its docket, subject of course to statutes requiring special treatment for specified types of cases."  *Prevot*, 59 F.3d at 565.

Although the instant case involves Petitioner's liberty interests and special care should be exercised to ensure that he has an adequate opportunity to present meritorious claims, the undersigned does not believe that there is anything inherently improper in restricting non-meritorious,  vexatious, or repetitive filings if such an order is based upon reasonable grounds and does not prohibit the filing of legitimate claims. *Cf. Jerdine v. Johnson*, Case No. 1:07CV3193, ECF Dkt. #7 (N.D. Ohio Case Oct. 31, 2007).   In applying the vexatious litigator statute to a criminal defendant, the Supreme Court of Ohio, held that the statute did not violate due process.  *Mayer v. Bristow*, 91 Ohio St.3d 3, 13, 740 N.E.2d 656, 665 (Ohio, 2000). The *Mayer* court explained:

> The purpose of the vexatious litigator statute is clear. It seeks to prevent abuse of the system by those persons who persistently and habitually file lawsuits without reasonable grounds and/or otherwise engage in frivolous conduct in the trial courts of this state. Such conduct clogs the court dockets, results in increased costs, and oftentimes is a waste of judicial resources-resources that are supported by the taxpayers of this state. The unreasonable burden placed upon courts by such baseless litigation prevents the speedy consideration of proper litigation.

---

[8]    From August 4, 2004 (ECF Dkt. #48, Ex. 35) to July 3, 2008 (ECF Dkt. #9) or  November 5, 2008 (ECF Dkt. #11).

*Id*.  The *Mayer* court's explanation is consistent with the *Prevot* court's definition of a state court's inherent powers.  Further, the *Mayer* court held that the statute complied with due process because it limited the courts' abilities to restrict filings:

> It provides authority to the court of common pleas to require, as a condition precedent to taking further legal action in certain enumerated Ohio trial courts, that the vexatious litigator make a satisfactory demonstration that the proposed legal action is neither groundless nor abusive.  Thus, "[t]he vexatious litigator statute bears a real and substantial relation to the general public welfare because its provisions allow for the preclusion of groundless suits filed by those who have a history of vexatious conduct."

*Id*.  The court held that the "statute is not designed, nor does it operate, to preclude vexatious litigators from proceeding forward on their legitimate claims.  Instead, it establishes a screening mechanism under which the vexatious litigator can petition the declaring court, on a case-by-case basis, for a determination of whether any proposed action is abusive or groundless."  *Id*. at 666.  The undersigned recommends that the Court consider the *Mayer* court's analysis as well as the state court's application of the statute in this case and find that no due process violation occurred.

The state court applied the statute in this case, tailoring its order to restrict only unreasonable filings.  The undersigned notes that the record reflects numerous state court filings that prompted the state courts to enter it orders finding Petitioner to be a vexatious litigator.  *See* ECF Dkt. #48, Ex. 12, 15, 18, 21, 23, 25, 27, 28, 30, 32, 33, 36, 38, 39, 43, 44, 47, 48, 53, 55, 68-75, 76; *see also* Ex. 51 at 5; Ex. 76 (vexatious litigator orders).  In entering the first vexatious litigator order, Judge Kimbler detailed the necessity for declaring Petitioner to be a vexatious litigator.  Judge Kimbler  noted that Petitioner had filed a 73-page petition to vacate or set aside his sentence (Medina County Case No. 99 CR 0446), and after that petition was dismissed as not warranted by a good faith argument of extension of existing law, Petitioner filed a civil suit (Medina County Case No. 03 CIV 0509), which presented the same issues without presenting any additional facts or new legal bases.  ECF Dkt. #48, Ex. 51 at 3.  Judge Kimbler noted that Petitioner then filed a complaint against the entire Medina County Prosecutor's Office, seeking a Permanent Injunction of Harassment, which the court dismissed as frivolous or malicious.  ECF Dkt. #48, Ex. 51 at 3.  Judge Kimbler also noted that

-54-

Petitioner filed for a declaratory judgment against the county coroner, a writ of mandamus against the Medina County Commissioners, a writ of mandamus against the Medina Sheriff's Office, and a declaratory judgment against the state witnesses in his criminal trial, seeking a determination of criminal wrongdoing from the Wayne County Court of Common Pleas.  *Id*. at 3-4.

Upon entering the vexatious litigator orders, the state courts specifically afforded Petitioner an opportunity to file pleadings *if he first obtained leave of court* and demonstrated reasonable grounds for the motion.  ECF Dkt. #48, Ex. 51 at 5; Ex. 76.  The undersigned recommends that the Court find these restrictions to be reasonable in light of the number and nature of filings Petitioner made prior to the entry of the order.

Although Petitioner contends that the state courts misapplied the Ohio statute to him because he is a criminal defendant and the Ohio legislature intended the statute to be applied in civil cases (ECF Dkt. #56 at 78), the undersigned reiterates the Sixth Circuit's observation in *Prevot* that a court also has inherent and implied powers to manage its docket.  Therefore, the Ohio court's vexatious litigator order, with reasonable restrictions, was appropriate in this case pursuant to the court's inherent and implied powers, even if it was not a proper application of statute.

Further, Petitioner has failed to comply with the orders on several occasions.  It appears from the record that he continued to file substantive motions rather than seeking leave to file motions.  For example, in one entry following the entry of the vexatious litigator order, the Medina County Court of Common Pleas entered an order that listed 14 of Petitioner's pending filings, of which the court was aware, and denied them as not being based on reasonable grounds.  ECF Dkt. #48, Ex. 77; *See also* electronic docket in Medina County Common Pleas Case No. 99CR446.  Only two of these filings indicate that Petitioner sought leave of court.  *See Id*.

Petitioner has to demonstrate that he acted with diligence in exhausting his state court remedies.  *See Griffin,* 308 F.3d at 652.  On review of the record, the undersigned has identified three motions for leave that Petitioner filed after the state court issued the vexatious litigator order.  The first two were motions for leave to file writs of mandamus which were not related to the claims in the instant petition.  On June 24, 2009, Petitioner filed a motion in the Ninth District Court of

Appeals, seeking leave to file an action in mandamus compelling Judge Kimbler to issue a final order pertaining to the vexatious litigator order. ECF Dkt. #48, Ex. 78. On September 10, 2009, Petitioner filed a motion for leave to file a writ of mandamus against Judge Curran, because Petitioner contends that the sentencing hearing he conducted and the resulting judgment entry were void because the trial judge failed to impose mandatory court costs as O.R.C. § 2947.23 required. ECF Dkt. #48, Ex 80. Neither of these motions related to the claims raised in the 2003 petition. Further, these motions are not part of Ohio's established review process. For the foregoing reasons, they should not be considered for equitable tolling purposes.

Next, Petitioner arguably sought leave of court following entry of the vexatious litigator order in his April 24, 2007 motion for leave to file a delayed appeal. However, the appellate court denied that motion because he did not seek leave to file the motion for leave to file a delayed appeal. ECF Dkt. #48, Ex. 69. At first glance, the appellate court's order could be confusing:

> **On April 24, 2007, appellant filed a motion for leave to file a delayed appeal with this court**. Appellant, however, has been declared a vexatious litigator pursuant to statute. . . **Appellant has not sought leave to file his motion for leave to file a delayed appeal.**

ECF Dkt. #48, Ex. 69 (emphasis added). When read in conjunction with Rule 5 of the Ohio Rules of Appellate Procedure, one can see that any litigant seeking to file a delayed appeal must file a motion seeking leave of court. Ohio R. App. P. 5. (A)(1). Since the trial court had declared Petitioner to be a vexatious litigator, the appellate court required him to file an additional motion seeking leave to file a motion for leave to file a delayed appeal. ECF Dkt. #48, Ex. 69.[9] Petitioner

---

[9] Judge Kimbler's order declaring Petitioner to be a vexatious litigator explicitly applied only to actions in "the court of claims, or in a court of common pleas, municipal courts, or county court." ECF Dkt. #48, Ex. 51 at 5. The order did not explicitly apply to appellate courts. *Id.* Nevertheless, O.R.C. §2323.52(F)(2) requires a person who is subject to an order pursuant to O.R.C. 2323.52(D)(1) to seek leave to proceed in the appellate courts. The trial court did declare Petitioner to be a vexatious litigator in conformance with O.R.C. 2323.52(D)(1). *Compare* ECF Dkt. #48, Ex. 51 at 5 *with* O.R.C. 2323.52(D)(1)(a)-(c). Therefore, the appellate court appropriately acted pursuant to statutory authority. Additionally, the appellate court had the inherent authority to regulate its docket. *See Prevot*, 59 F.3d at 565, *discussed supra*. Accordingly, the appellate court acted in accordance with Ohio statutory authority and its inherent power.

has not called the undersigned's attention to anything in the record demonstrating that he has complied with the appellate court's order requiring the additional motion.  He is now well beyond his 30-day window for filing the appropriate motion, exhausting his remedies, and returning to federal court.

Although Petitioner contended that he was in a "procedural quagmire" by virtue of the state courts' vexatious litigator orders and that forcing him to return to the state courts would be an exercise in futility, the undersigned disagrees because: (1) Ohio's vexatious litigator statute does not impose an absolute bar and the courts did not impose one on him (*See Mayer*, 740 N.E.2d at 665-66; Ex. 51 at 5; Ex. 76); and (2) Petitioner exhausted his state court petition to vacate or set aside his sentence well before he was declared a vexatious litigator.

The closest Petitioner came to complying with federal exhaustion requirements after August 4, 2004 was filing a motion for leave to file a delayed appeal.  Rule 5(A)(1) to the Ohio Rules of Appellate Procedure requires all litigants to seek such a leave.  Accordingly, it was reasonable and not unduly burdensome for the appellate court to require Petitioner to file an additional motion for leave.  Petitioner has failed to comply with the appellate court's directive.

Petitioner did not seek leave to file a delayed appeal until over three years after Judge Matia dismissed his 2003 Petition.  *Compare* ECF Dkt. ##5,6 *with* ECF Dkt. #48, Ex. 69.  Moreover, he did not seek leave to file a delayed appeal until nearly three years after the Supreme Court of Ohio dismissed his state court petition to vacate.  ECF Dkt. #48, Ex. 35.  It is therefore questionable that Petitioner returned to the federal courts within 30 days of his exhausting his state court remedies– whether that exhaustion date is: when the petition to vacate was dismissed on August 4, 2004 (ECF Dkt. #48, Ex. 35), when his state court habeas petition was denied on February 5, 2005 (ECF Dkt. #48, Ex. 50) or when his delayed appeal was denied on August 16, 2007 (ECF Dkt. #48, Ex. 69). *See Griffin*, 399 F.3d at 631.  Petitioner did not file his first motion to reinstate his habeas petition until July 3, 2008.  ECF Dkt. #9.  Accordingly, the undersigned recommends that the Court find that mandatory equitable tolling is not appropriate in this case.

-57-

If mandatory equitable tolling does not apply under the *Palmer* test, then the Court considers equitable factors.  *See Griffin*, 399 F.3d at 361.  In *Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005), the United States Supreme Court held that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Further, the Sixth Circuit applies a non-exhaustive five factor test that also inquires of the petitioner's diligence.  *See Griffin,* 399 F.3d at 630; *Andrews v. Orr*, 851 F.2d 146 (6th Cir.1998) ((1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.)

Here, Petitioner demonstrated a lack of diligence by failing to comply with clear directives of the state appellate court in connection with his petition to vacate his sentence.  Further, he demonstrated a lack of diligence with respect to his federal constitutional claims by remaining in the state courts and continually pursuing civil complaints and petitions  unrelated to his federal claims (*i.e.* various actions for contempt, mandamus, declaratory judgment, and injunction).  Petitioner does not contend he had a lack of notice of the federal filing requirement and "[a]bsence of prejudice is a factor to be considered only after a factor that might justify tolling is identified."  *See Griffin*, 399 F.3d at 637 quoting *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir.2003); *Dunlap*, 250 F.3d at 1009.  Therefore, the equitable factors weigh against applying equitable tolling in this case.

Lastly, Judge Economus has stated that "Bozsik's § 2254 habeas petition—which he filed in July 2003—is now timebarred under AEDPA."  ECF Dkt. #15 at 2.  Therefore, if on review of the exhibits attached to the return of writ the Court agrees that equitable tolling is inappropriate, the instant petition should be dismissed in its entirety as time-barred due to Petitioner's delay in the state courts between 2003 and 2008.

### ii.     Relation Back: Grounds 3-10

Respondent contends that Grounds Three through Ten do not relate back to the 2003 petition and are time-barred.  ECF Dkt. #48 at 27-34.  Respondent concedes that Grounds One and Two are timely.

The United States Supreme Court has held that:

> An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.
>
> *        *        *
>
> A discrete set of Rules governs federal habeas proceedings launched by state prisoners. See Rules Governing Section 2254 Cases in the United States District Courts. [ ] The last of those Rules, Habeas Corpus Rule 11, permits application of the Federal Rules of Civil Procedure in habeas cases "to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules."
>
> *        *        *
>
> Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings "ar[i]se out of the conduct, transaction, or occurrence." Rule 15(c)(2).
>
> *        *        *
>
> Rule 15(c)(2), as earlier stated, provides that pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The key words are "conduct, transaction, or occurrence."

*Mayle v. Felix*, 545 U.S. 644, 648-656 (2005) (internal footnote omitted).  The *Mayle* Court considered and rejected the Ninth and Seventh Circuit's interpretation of "conduct, transaction, or occurrence" as any claim related to the habeas petitioner's trial, conviction, or sentence.  *Id.* at 656.  The Court reasoned that "Under that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the

-59-

constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* at 656-57. The *Mayle* Court ultimately required that new claims relate back in time and because Rule 15(c)(2) "relaxes, but does not obliterate, the statute of limitations." *Id.* at 659. Therefore, new claims must share a common core of operative facts. *Id.*

In articulating the "time and type" relation back test, the *Mayle* Court specifically noted that "Habeas Corpus Rule 2(c) . . . instructs petitioners to 'specify all [available] grounds for relief' and to 'state the facts supporting each ground.' " *Mayle*, 545 U.S. at 661. The Court specifically noted that the model available for aiding prisoners in filing habeas petitions states in boldface:

> **"CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date."** Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).

*Mayle*, 545 U.S. at 655-56.

Here, Petitioner originally raised claims that the jury improperly applied jury instructions (Ground 1, 2003 petition), the trial court provided improper instructions (Ground 2, 2003 petition), the trial court admitted improper evidence (Ground 3, 2003 petition), the State violated discovery obligations (Ground 4, 2003 petition) and trial counsel was ineffective (Ground 5, 2003 petition). ECF Dkt. #1. In the instant petition, Petitioner raises multiple claims that do not relate back in time and type to the 2003 petition.

In Grounds Three and Four of the instant petition, Petition contends that he did not receive the effective assistance of trial counsel. In the 2003 petition, Petitioner stated that "Counsel was ineffective by not objecting to critical trier of facts; in addition, not filing proper motions during trial." ECF Dkt. #1. As the *Mayle* Court emphasized, a petitioner must state his legal grounds with a factual basis specifically. Here, Petitioner challenged trial counsel's failure to object to the "critical trier of facts." Although this claim is unclear, it is clear that it has no relation to Ground Three of the instant petition. Ground Three of the instant petition relates to alleged "uncounseled critical stage proceedings" and "critical stage proceedings" which are "silent in the record." ECF Dkt. #26 at A-5-

-60-

6.  These claims say nothing about a critical trier of fact.

Ground Five of the 2003 petition also challenged defense counsel's failure to file "proper motions **during trial**." ECF Dkt. #1 (emphasis added).  Ground Three of the instant petition clearly challenges the purported ineffective assistance of counsel during pretrial proceedings.  " ECF Dkt. #26 at A-5-6.  Therefore, Ground Three neither relates back in time nor type.

Additionally, Ground Three of the instant petition raises a claim based upon the same factual basis as Ground Four of the 2006 petition.  Judge Nugent has already found Ground Four of the 2006 petition to be time-barred and the Sixth Circuit Court of Appeals has affirmed his decision.

Ground Four, Sub-Ground I challenges counsel's ineffectiveness for failing to file a suppression motion.  ECF Dkt. #26, A-6.  However, Ohio Rule of Criminal Procedure 12(C)(3) unequivocally requires a defendant to file a motion to suppress before trial.  Ohio R. Crim. P. 12(C)(3).  Therefore, counsel's purported error pertaining to the suppression is not a failure to "fil[e] [a] proper motion [ ] **during trial**." (ECF Dkt. #1)(emphasis added) and Ground Four, Sub-Ground I does not relate back in time or type.

Ground Four Sub-Ground II and III appear to contend that trial counsel failed to object during trial.  Particularly, Sub-Ground II contends that trial counsel should have objected during a cross examination and closing and Sub-Ground III contends that counsel should have objected during closing.  ECF Dkt. #26 at A-6.  These grounds still do not relate back in time and type to Ground Five of the 2003 petition.

The *Mayle* Court explained that, unlike a typical civil suit, habeas petitioners are charged with a duty to specify all grounds for relief and a *factual basis*:

> Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Habeas Corpus Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."

*Mayle*, 545 U.S. at 655.  The *Mayle* Court specifically relied on the Advisory Committee notes to

-61-

Habeas Corpus Rule 2, which state that, "In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important ... ." *Id*. (internal citation omitted).  Further, the Court quoted the Advisory Committee notes to Habeas Corpus Rule 4, which state that (" '[N]otice' pleading is not sufficient, for **the petition is expected to state facts** that point to a real possibility of constitutional error." *Id*. (internal citation omitted) (emphasis added).

Here, Ground Five of the 2003 petition stated no facts.  It merely stated a legal conclusion that trial counsel failed to object.  It identified no evidence that was purportedly objectionable.  Thus, Ground Five sought to preserve a habeas claim pertaining to counsel's failure to raise any objection at any time during the entire trial.  To allow relation back based upon such an unspecific claim would contravene the U.S. Supreme Court's dictates in *Mayle*.

Lastly, Sub-Ground IV seeks to raise a cumulative error of the Sub-Ground I-III.  Since Sub-Ground I-III should not relate back, the undersigned recommends that the Court find that Sub-Ground IV does not relate back and Ground Four is time-barred in its entirety.

Next, the undersigned notes that Grounds Five, Six, Seven, Eight, Nine, and Ten of the instant  petition do not appear in the 2003 petition, with one arguable exception.  In Ground Five, Sub-Ground II, Petitioner contends that the prosecution failed to disclose exculpatory and impeachment evidence.  A closer comparison of Ground Five, Sub-Ground III and Ground Four of the 2003 petition shows that they were based upon different facts.   In Ground Four of the 2003 petition, Petitioner argued that the State failed to produce evidence pertaining to other suspects. ECF Dkt. #1.  In  Ground Five, Sub-Ground II , Petitioner contends that the State failed to produce alibi evidence.  ECF Dkt. #26 at A-7.  Therefore, Grounds Five, Six, Seven, Eight, Nine, and Ten do not relate back in time or type.  The Court should find them to be time-barred unless they can be otherwise considered timely.

Additionally, Ground Five  of the instant petition raises the same claims as Grounds One, Two, and Five of the 2006 petition and Ground Six of the instant petition raises a claim based upon the same factual basis as Ground Four of the 2006 petition.  *Compare* ECF Dkt. #26 *with* ECF Dkt.

-62-

#1 (Case No. 1:06CV978).

For the foregoing reasons, the undersigned recommends that the Court find that Grounds Three through Ten of the instant petition do not relate back to the 2003 petition. The undersigned notes that the claims in Grounds Seven and Nine potentially invoke a different AEDPA statute of limitations start date under § 2244(d)(1)(D) because they have a different factual basis that could not have been discovered until Petitioner's conviction was final.

### iii.    Actual Innocence

In Ground Ten of the instant petition, Petitioner contends that he is actually innocent of Carol Bozsik's homicide. ECF Dkt. #26 at A-8. Claims of actual innocence are not cognizable as stand-alone constitutional claims, but do permit consideration of otherwise time-barred claims. *See Herrera v. Collins*, 506 U.S. 390, 416-17(1993) ("Our federal habeas cases have treated claims of 'actual innocence,' not as an independent constitutional claim. . . "); *Sitto v. Lafler*, 279 Fed.Appx. 381, 2008 WL 2224862 (6th Cir. May 28, 2008), unreported ("we continue to adhere to the rule that a free-standing innocence claim is not cognizable for habeas review. "); *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005), *discussed infra*. To the extent the Court wishes to address actual innocence from a statute of limitations standpoint, the undersigned offers the following analysis.

The Sixth Circuit has held that the Constitution requires an actual innocence exception to AEDPA's statute of limitations. *Souter*, 395 F.3d at 599. The Southern District of Ohio has aptly summarized the burden for establishing actual innocence:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway [the AEDPA statute of limitations] and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. **To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."** *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "**To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence**-whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513
U.S. at 324. The Court counseled however, that the actual innocence exception should
"remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321.

*Medina v. Wolfe*, No. 2:06-CV-921, 2007 WL 2323381 at *9, slip op. (S.D. Ohio Aug. 9, 2007)
(emphasis added). This Court and other jurisdictions have held that evidence that was available at
the time of trial cannot be considered in ruling upon a claim of actual innocence. *See Rickard v.
Wolfe*, No. 3:06-CV-2753, 2007 WL 4526522, *slip op*. at *6, *15 (N.D. Ohio Dec. 17, 2007); *Leggett
v. U.S.*, Nos. 1:05CV732, 1:92CR233, 2006 WL 3091316, *slip op*. at *2 (N.D. Ohio Oct.  27, 2006);
*Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004);  *Osborne v. Purkett*, 411 F.3d 911, 920 (8th
Cir.2005) ("Evidence is only new [for actual innocence purposes] if it was not available at trial and
could not have been discovered earlier through the exercise of due diligence.") (internal quotations
omitted); *Cooper v. Brown*, 510 F.3d 870, 969-70 (9th Cir. 2007).

In his traverse, Petitioner argues that the sufficiency of the evidence does not support the
conviction, but he advances this argument under Ground Ten.  *See* ECF Dkt. #56 at 78-79.
Therefore, the undersigned surmises that this argument constitutes the basis of his actual innocence
claim.

Petitioner contends that the "prosecutions [sic] case-in-chief is unambiguous, the only time
Bozsik could have committed the homicide was 8:46 a.m. And 8:57 a.m. [sic] After Bozsik obtained
the post trial phone call, Bozsik has obtained an absolute alibi that goes against the core of the
prosecuting attorney;s [sic] case that Bozsik committed the homicide." ECF Dkt. #56 at 78-79.

Petitioner has not established factual innocence.  Indeed, the evidence against him remains
compelling, particularly with regard to placing him at the murder scene.  On the morning of the
murder, Petitioner left work, offering the excuse that he was returning home – a 15 to 20 minute
drive – to take the garbage out.  ECF Dkt. #48, Ex. 7 at 5.  Between 7:45 a.m. and 8:46 a.m. Carol
Bozsik was on the telephone with Mr. Wise.  *Id*.  Around 8:30 a.m. she told Mr. Wise that she saw
Petitioner's vehicle outside.  *Id*.  At 9:00 a.m., Anna Berry saw Petitioner driving eastbound about
a half a mile from his house.  *Id*.  And at 9:17 a.m. Petitioner returned to work.  *Id*.

-64-

In the face of this evidence, Petitioner contends that telephone records establish his factual innocence. Petitioner contends that he made a telephone call from ABSC at 9:30 a.m., which exculpates him. ECF Dkt. #56 at 48. He further contends that defense counsel made numerous unsuccessful attempts to obtain ABSC telephone records during pretrial proceedings. *Id*. The undersigned notes that the amended petition and the traverse do not cite a specific telephone record in support of Petitioner's claim. It is unclear what telephone record Petitioner is referring to in stating that "After Bozsik obtained the post trial telephone call, Bozsik has obtained an absolute alibi. . ." *See* ECF Dkt. #56 at 78-79. The undersigned believes that Petitioner is referring to records contained in ECF Dkt. #48, Ex. 53 (Ex. C-12) because these are ABSC telephone records from his extension. Petitioner contends that these records (or some other unidentified telephone records) establish an actual alibi because the prosecution contended that victim's time of death was 9:00 a.m.

First, Petitioner has not detailed the efforts that counsel made to obtain these records during pretrial. Therefore, it is questionable that these records were truly unavailable with the exercise of due diligence. In fact, it appears that Petitioner was able to obtain these records by sending a request to ABSC. *See* ECF Dkt. #48, Ex. 53 (Ex. C-12). Therefore, even if they are probative, they are not newly discovered evidence to establish a gateway actual innocence claim under *Schlup*.

Even so, Petitioner has not demonstrated how these telephone records place him personally at extension 7387 when a given telephone call was made. While arguing that telephone records offer an "absolute alibi," Petitioner also argues that Detective Ross offered false testimony regarding other calls from Bozsik's extension to a gun retailer because, "It was discovered or disclosed other ABSC employees used Bozsik's personal extension. . ." ECF Dkt. #56 at 40. On Petitioner's own admission, his purported alibi is not "absolute" because other people had access to his telephone extension. Regardless, the appellate court noted that Petitioner returned to work at 9:17 a.m. ECF Dkt. #48, Ex. 7 at 5. So, his purported 9:30 a.m. telephone call does not undercut the state court's factual findings. Petitioner left work to return home and take out the garbage (before 7:30 a.m.), Carol Bozsik told Mr. Wise that she saw Petitioner's vehicle in the driveway (7:45 a.m. – 8:46 a.m.),

-65-

Anna Berry saw Petitioner driving eastbound a half a mile from his house (9:00 a.m.),  and he returned to work at 9:17 a.m.  ECF Dkt. #48, Ex. 7 at 5.  Even if Petitioner did make a telephone call at 9:30 a.m. as he alleges, evidence of that call would not be inconsistent with the evidence placing him at the scene of the murder.

Moreover, the evidence that the undersigned has gleaned from the record shows that Petitioner's extension was used at 10:04:42 a.m. on November 30, 1999, *not* 9:30 a.m. as Petitioner contends.  *See* ECF Dkt. #48, Ex. 53 (Ex. C-12) at 57 (showing telephone calls made at 11/29/99 12:57:24 and the next call made at 11/30/99 at **10:04:42** a.m.).  Therefore, even if Petitioner used the telephone, and even if the 9:30 a.m. timing of the call could exonerate him, Petitioner has failed to direct the Court to evidence of a 9:30 a.m. call.

Lastly, Petitioner contends that the state's witness offered perjured testimony and a reasonable minded person would have acquitted him.  ECF Dkt. #56 at 79.  Again, Petitioner points to evidence that was available at the time of trial.  He points to telephone records, evidence of the color  of Richard Wise's truck, and  photographs of Petitioner's car with a leaking tire, which purportedly discredit state witness testimony.  *See* ECF Dkt. # 56 at 69.  Petitioner contends that the state used this evidence to improperly discredit him.  This evidence was obtainable with the exercise of due diligence at the time of trial and does nothing to establish Petitioner's factual innocence.

Petitioner also contends that one witness, Darrell Burkhart, testified that Petitioner told him around the time of Mr. Burkhart's mother's funeral that Petitioner owned a handgun.  ECF Dkt. #56 at 45. Petitioner contends that Mr. Burkhart later "recanted" his testimony.  *Id*. at 47.  Witness recantations are to be viewed with the "utmost suspicion."  *Thorne v. Moore*, No. 5:06-CV-872, 2009 WL 2421741 at  at *32 (N.D.Ohio July 31, 2009), slip op.  As Judge James Gwin of this Court observed, the United States Supreme Court has expressed disfavor for granting new trials based upon recanted testimony:

> Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction. For these reasons, a witness' recantation of trial testimony typically will justify a new trial only where the

reviewing judge after analyzing the recantation is satisfied that it is true and that it will "render probable a different verdict."

*Id*. quoting *Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34, 105 S.Ct. 34, 82 L.Ed.2d 925 (1984).

Here, Darrell Burkhart's "recantation" is de minimis. Mr. Burkhart's attorney sent a letter to Mr. Bozsik, informing him that Mr. Burkhart was mistaken as to the date of his mother's funeral; it was February of 1998 rather than February, 1999. ECF Dkt. #57, Ex. K. The undersigned fails to see how this "recantation" establishes Petitioner's factual innocence. Petitioner has made no effort to explain how Mr. Burkhart's testimony demonstrates factual innocence. Further, the date of Mr. Burkhart's mother's funeral could have been ascertainable through the exercise of due diligence at the time of trial. Mr. Burkhart's "recanted" testimony therefore does not constitute a basis for a finding of actual innocence.

For the foregoing reasons, the undersigned recommends that the Court find Petitioner's actual innocence claim to be non-cognizable as a standalone claim and meritless as a gateway claim permitting review of otherwise time-barred habeas claims.

### iv.       § 2244(d)(1)(D): Grounds Seven and Nine

Arguably, Ground Seven has a different AEDPA statute of limitations starting date because it is based, in part, on a recusal order dated June 7, 2007. ECF Dkt. #26 at A-8. As noted above, §2244 provides that "The limitation period shall run from the latest of– . . . (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner contends that the trial judge was biased "throughout the criminal process" and the bias was confirmed when Judge Collier recused himself on June 7, 2007. Giving Petitioner the benefit of the doubt, the undersigned recommends that the Court find that the factual basis for this claim accrued on June 7, 2007. It appears that Petitioner did not file any direct appeals or delayed appeals in connection with the trial judge's alleged bias, and Petitioner has not alleged cause for failing to do so. *O'Sullivan*, 526 U.S. 845 (requiring a petitioner to "use the State's established appellate review procedures before he presents his claims to a federal court."). Therefore, that claim is procedurally defaulted.

-67-

Given that Petitioner did not file a direct appeal in connection with the trial judge's alleged bias, the undersigned concludes that the AEDPA statute of limitations in connection with Ground Seven expired one year after June 7, 2007. This time would not be subject to equitable tolling, since the claim is unrelated to the 2003 petition. Accordingly, the undersigned recommends that the Court find Ground Seven to be time-barred.

Ground Nine also has a potentially different AEDPA statute of limitations starting date because it is an appeal-based claim with a factual basis that Petitioner could not have discovered until March 17, 2005, when the Medina County Court of Common Pleas issued an order declaring him to be a vexatious litigator. ECF Dkt. #48, Ex. 51. Therefore, giving Petitioner the benefit of the doubt, the factual predicate of his claim may not have arisen until March 17, 2005, or even later when the courts enforced the vexatious litigator orders in 2007 and 2008. *See* ECF Dkt. #48, Ex. 76-79. The undersigned recommends that the Court find Ground Nine to be timely.

### B. Merits

#### i. Ground One

In Ground One of the instant petition, Petitioner alleges that the trial court erred in admitting prejudicial evidence. ECF Dkt. #26 at A-3. Petitioner contends that the trial court erred in admitting testimony from Chris Jones pertaining to a Bashinski test for lead and that the trial court erred in admitting testimony from Cheryl Gearhart.[10] *Id.* Respondent contends that Petitioner's argument pertaining to Chris Jones is procedurally defaulted because he did not object during trial.

In the trial court, Petitioner objected to the testimony as prejudicial, based upon Ohio Rule of Evidence 403. Tr. at 1558-59 (The Court: "The objection in this particular matter to this test was a 403 objection. . ."). On appeal, however, Petitioner argued that the state had not laid a proper foundation as Ohio Rule of Evidence 702 requires. ECF Dkt. #48, Ex. 4 at 18-19. In this case, Petitioner failed to comply with a state court procedural bar. "Ohio employs a

---

[10] There is a discrepancy between the petition, the appellate court's decision, and the trial transcript as to the spelling of Ms. Gearhart's name. The undersigned has adopted the spelling from page 4 of the trial transcript.

contemporaneous-objection rule, under which 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *Shafer v. Wilson*, No. 07-3284, 2010 WL 395914 at *5 (6th Cir. Feb. 4, 2010) unreported, quoting *State v.1981 Dodge Ram Van*, 36 Ohio St.3d 168, 522 N.E.2d 524, 526 (Ohio 1988).  Here, the appellate court enforced the contemporaneous objection rule.  ECF Dkt. #48, Ex. 7 at 13-14. Petitioner now seeks to return to a prejudice argument, similar to the  Rule 403 argument that the appellate court deemed to be waived.  It is clear that this claim is now procedurally barred  because Petitioner should have raised his prejudice argument on his direct appeal.  *See, e.g.*, *State v. Pitts*, No. L-05-1212, 2005 WL 2600241 at ¶24 (Ohio App. 6 Dist. Oct. 13, 2005), unreported; *State v. McMeans*, No. 91AP-139., 1991 WL 82044 at *1 (Ohio App. May 16, 1991), unreported ("Since this issue was not raised in appellant's direct appeal, it is waived and will not be considered by this court.").  Therefore, his evidentiary claim has been waived in the trial court.  Petitioner has not established cause for his procedural default.  Therefore, the undersigned recommends that the Court find this claim to be procedurally defaulted.

Next, Petitioner contends that the trial court erred in admitting testimony from Cheryl Gearhart.  The Sixth Circuit has held that a state court error must be egregious to merit habeas relief: "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004).  The Sixth Circuit articulated the appropriate standard for making the foregoing determination:

> The Supreme Court looks to several factors in determining whether a defendant's due process rights require the admission of a particular item of evidence. First, the Court considers the extent to which the proffered evidence is "critical" in the context of the case. Second, the Court considers the extent to which the proffered evidence "tend[s] to exculpate" the accused.  Finally, the Court determines whether the proffered evidence bears "persuasive assurances of trustworthiness[.]"

*Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994) (internal citations omitted).  Lastly, "where

the highest court of the State has not spoken, this Court is obligated to follow published intermediate state appellate court decisions, [it is] not bound by a decision of an intermediate state appellate court when [it is] convinced that the highest state court would decide differently." *Olsen v. McFaul,* 843 F.2d 918, 929 (6th Cir. 1988).

In the case at bar, the Ninth District Court of Appeals considered the possibility that the trial court erred in admitting Cheryl Gearhart's testimony, but explained that any error in admitting her testimony was not prejudicial due to the State's presentation of a "myriad of [other] evidence against Bozsik over the course of a three-week long trial."ECF Dkt. #48, Ex 7 at 12-13.  The undersigned urges the Court to consider the following analysis from Ninth District Court of Appeals:

> Cheryl Gearhart was the wife of Bozsik's insurance agent Bill Gearhart, and an acquaintance through their daughters' youth soccer team. Cheryl was aware that Carol Bozsik was murdered on November 30, 1999. The morning of December 6, 1999, Bozsik called the Gearhart home and asked Cheryl about the status of his policy. Cheryl summoned her husband to the phone. Bill told Bozsik that the policy was ineffective because Carol had not signed the final paperwork. That morning, Cheryl decided to move the family from their house. At trial, Cheryl explained her rationale for moving to her in-laws house:
>
> I felt that-the person-if Steve had done this, that he was not thinking rationally, and my husband had just told him that he was not going to receive a two hundred twenty-five thousand dollars life insurance policy.
>
> And I thought he might be angry at my husband because he wasn't going to receive the money, and I-* * * And we were just afraid that something might happen to our family.
>
> Appellant claims the foregoing testimony caused him substantial prejudice. Assuming without deciding that this testimony should not have been admitted, such error, if any, was harmless. Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Accordingly, "where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams* (1983), 6 Ohio St.3d 281, paragraph six of the syllabus.
>
> The state presented a myriad of evidence against Bozsik over the course of a three-week long trial that included over twenty-three hundred pages of testimony and over one hundred seventy exhibits. Even excluding Cheryl's statements, the evidence would be sufficient to sustain Bozsik's convictions. Therefore, any error that occurred in the improper admission of the statements was harmless.

ECF Dkt. #48, Ex. 7 at 12-13.  Due to the amount of evidence introduced against Petitioner,[11] the undersigned recommends that the Court find that the Appellate Court did not unreasonably apply clearly established  federal law as determined by the Supreme Court of the United States.  The undersigned recommends that this Court likewise find that the evidence against Petitioner was overwhelming and any trial court error pertaining to the admission of Ms. Gearhart's testimony was not prejudicial.

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground One with prejudice due to a lack of merit.

### ii.        Ground Two

In Ground Two, Petitioner contends that he was improperly denied discovery pertaining to another suspect, Richard Wise.  ECF Dkt. #26 at A-4.  This ground appears to relate back to Ground Four of the 2003 petition.  Further, it appears to be Petitioner's only timely *Brady* claim.  Therefore, Court should limit the scope of its *Brady* inquiry to whether Petitioner has shown that the state committed a *Brady* a violation by failing to produce evidence pointing to Richard Wise as a suspect.

In *Brady v. Maryland*, the United States Supreme Court held that "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  In later cases, the Court eliminated the requirement for a defendant to request favorable information and stated that the constitutional duty to disclose is "triggered by the potential impact of favorable but undisclosed evidence. . ." *Kyles v. Whitley,* 514 U.S. 419, 434 (1995); *United States v. Bagley*, 473 U.S. 667 (1985);  *United States v. Agurs*, 427 U.S. 97 (1976).

To prevail on a *Brady* claim in habeas, a petitioner must demonstrate that the State withheld evidence from the defense at trial that was both material and favorable.  *Kyles,* 514 U.S. at 432; *Brady*, 373 U.S. at 87.  Evidence is considered to be "exculpatory" for *Brady* purposes if it is

---

[11]        *See* § I, *supra*; ECF Dkt. #48, Ex. 7 at 3-9.

-71-

favorable to the accused.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987).  Exculpatory evidence includes impeachment material.  *Bagley*, 473 U.S. at 676.  In fact, inculpatory evidence may be considered *Brady* material if it may be used to impeach a witness.  *Strickler v. Greene*, 527 U.S. 263, 21 (1999).

Evidence is "material" for *Brady* purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Kyles*, 514 U.S. at 433 (internal quotation omitted).  "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. . ."  *Id*. at 434.  The *Kyles* Court reaffirmed an earlier holding from *Bagley* outlining four aspects of materiality.  With regard to the first aspect, the *Kyles* Court stated that:

> The "touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles*, 514 U.S. at 435.  The second aspect of materiality is that it is not a sufficiency of evidence test and a defendant need not demonstrate that after discounting inculpatory evidence in light of the undisclosed evidence, there would have been enough left to convict.  *Id*.  "One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Id*.

Third, the *Kyles* Court noted that there is no need for harmless error review once a court has found a constitutional error because a *Bagley* error could not be treated as harmless where there is a reasonable probability that the result of proceeding would have been different if the withheld evidence had been disclosed.  *Kyles*, 514 U.S. at 435.

Fourth, the *Kyles* Court stressed that, in assessing materiality, suppressed evidence must be considered collectively, not item by item.  *Kyles,* 514 U.S. at 436.  The definition of *Bagley* materiality in terms of cumulative effect provides the prosecution with some deference while imposing a corresponding burden:

> On the one side, showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a *Brady* violation, without more. But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady,* 373 U.S., at 87, 83 S.Ct., at 1196-1197), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

*Kyles,* 514 U.S. at 437-38.

Further, a court is not to consider the motives of the prosecution in withholding the suppressed evidence.  *Brady*, 373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution*.") (emphasis added).

Turning to the instant petition, the undersigned first notes that Petitioner makes multiple *Brady* arguments which are unrelated to other suspects and do not relate back to the 2003 petition, as discussed above.  Therefore, the only timely *Brady* claim that Petitioner has presented is contained in Ground Two of the instant petition, where he asserts that the prosecution failed to provide evidence pertaining to Richard Wise as a suspect.

In addressing Petitioner's claim that his conviction was against the manifest weight of the evidence, the appellate court dismissed the notion that the victim's boyfriend, Richard Wise, was a suspect:

> At trial, appellant pointed the finger at Carol's boyfriend, Richard Wise, as the culprit. Wise had no discernable motive to kill Carol, his girlfriend. The morning Carol was killed, she was talking to Wise from 7:45 a.m. to 8:46 a.m. During that conversation Carol told Wise that she saw appellant's car outside, but had not seen him in the house. Carol told Wise to come look for her if she did not show up for work. Carol also expressed trepidation to Wise about whether she should be concerned about appellant seeking a higher life insurance policy for her that made appellant the beneficiary. Later, Wise would call Bozsik's home ten times starting at 11:25 a.m. looking for Carol. On December 1, 1999, detectives intercepted Wise as he came into the restaurant where Carol worked. Wise consented to have his pick up truck searched. Detectives found a card from Carol to Wise signed "I love you, Carol." Wise consented to an interview that went an hour and a half long. It was at the start of the interview that Wise first learned that Carol was dead, whereupon he cried. Wise turned over a firearm to authorities, which was tested and determined not to be the murder weapon. At the interview, Wise disclosed that he had never been to the Bozsik residence, and actually did not know exactly where Carol lived. Wise explained that after he went to lunch, he then went driving around Wadsworth looking for Carol's car.

ECF Dkt. #48, Ex. 7 at 8-9.  Given the foregoing synopsis of the evidence, it is unlikely that Mr. Wise was a suspect.

Further, Petitioner's briefs to this Court have not made a showing that the prosecution failed to disclose favorable and material evidence. Petitioner makes no showing that Mr. Wise was actually a suspect (again this is the only *Brady* claim that the undersigned recommends that the Court find timely). Rather, Petitioner argues that the prosecution impeached him and his son with a line of questioning pertaining to the color of Mr. Wise's truck. *See* ECF Dkt. #56 at 41-44, 48-49. Petitioner contends that Detective Kevin Ross testified that Mr. Wise drove a dark blue truck. Petitioner contends that the state used Detective Ross' testimony to attack Petitioner's credibility and his son's credibility because they contended the truck was blue and tan. ECF Dkt. #56 at 55. Petitioner contends that, following the trial he has subpoenaed records from the Summit County Title Bureau to obtain the vehicle identification number ("VIN") of Mr. Wise's truck, and after obtaining the VIN, he subpoenaed the General Motors Corporation production schedule showing that the truck is two tone. Thus, Petitioner at best presents a *Brady* claim attacking Detective Ross's credibility pertaining to testimony involving the color of Mr. Wise's truck. Petitioner makes no showing as to how the color of Mr. Wise's truck establishes that he was a suspect.

Even if the color of Mr. Wise's truck was probative, Petitioner has himself demonstrated that no *Brady* violation occurred. Petitioner had independent access to the evidence that purportedly

-74-

demonstrates the color of Mr. Wise's truck.  " '[T]he *Brady* rule does not apply if the evidence in question is available to the defendant from other sources.' ... [W]here the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine."  *U.S. v. Wilson,* 901 F.2d 378, 381 (4th Cir. 1990); *see also  Hunt v. McDade,* 205 F.3d 1333, 2000 WL 219755, (4th Cir. 2000) unpublished; *U.S. v. Hayes,* 83 F.3d 429, 1996 WL 205482 at *2 (9th Cir. 1996) ("The prosecution did not violate its Brady obligation with respect to the SEC documents because Hayes had independent access to these documents. 'Since suppression by the Government is a necessary element of a Brady claim, if the means of obtaining the exculpatory evidence has been provided to the defense, the Brady claim fails.' ") quoting *United States v. Dupuy*, 760 F.2d 1492, 1501 n. 5 (9th Cir.1985).   Petitioner's traverse demonstrates that he had independent access to evidence demonstrating the color to Mr. Wise's truck.  Accordingly, the undersigned recommends that the Court dismiss Ground Two due to a lack of merit.

### iii.    Alleged ex parte hearings: Grounds Three and Four

The undersigned notes that Petitioner challenges the propriety of the trial court's ex parte hearing throughout the instant petition in Grounds Three and Four.  Although this claim is time-barred, the undersigned also notes that Petitioner's claim lacks merit.  In this case, the trial judge conducted an in camera inspection of an investigative file at defendant's request.  *See* ECF Dkt. #48, Ex. 36 (Ex. B),  Ex. 55 at ¶13.

"[I]t is reasonable to require the prosecutor to respond [to a discovery request] either by furnishing the information or by submitting the problem to the trial judge." *U. S. v. Agurs*, 427 U.S. 97, 106 (1976).  "The submission of discovery materials to the court for an in camera inspection and decision as to which materials are discoverable is commonly used when the Government's need for preserving confidentiality over the materials must be balanced with the defendant's constitutional right to evidence material to his defense."  *U.S. v. Bocra*, 623 F.2d 281, 285 (3d Cir. 1980). Therefore, Petitioner's claims pertaining to alleged ex parte hearings are meritless.

-75-

iv.    **Ground Seven**

Petitioner contends that Judge Collier was biased throughout the proceedings. ECF Dkt. #26 at A-8; ECF Dkt. #56 at 69-76.  Petitioner reasons that Judge Collier recused himself the same day Petitioner filed a post conviction petition. ECF Dkt. #56 at 73-74.  Petitioner contends that Judge Collier recused himself before the Supreme Court of Ohio served him with the post conviction petition and he stated no reason for his recusal.  *Id*.  Petitioner concludes that the Court should surmise that "Judge Collier recused himself from the June 1, 2007 post conviction petition, since his sworn affidavit must be addressed as testimony by Judge Collier in Bozsik's case."

The United States Supreme Court has stated that:

> [M]ost questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828, 106 S.Ct. 1580, 1588-1589, 89 L.Ed.2d 823 (1986). Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. *See, e.g., Aetna, id.*, at 820-821, 106 S.Ct., at 1584-1585; *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927); 28 U.S.C. §§ 144, 455; ABA Code of Judicial Conduct, Canon 3C(1)(a) (1980). But the floor established by the Due Process Clause clearly requires a "fair trial in a fair tribunal," *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), before a judge with no actual bias against the defendant or interest in the outcome of his particular case. *See, e.g., Aetna, supra*, at 821-822, 106 S.Ct., at 1585-1586; *Tumey, supra*, at 523, 47 S.Ct., at 441.

*Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997).  There is, however, a presumption that public officials have " 'properly discharged their official duties.' " *Id*. at 909 quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996).  In the *Bracy* case, that presumption was overcome where a judge "was shown to be thoroughly steeped in corruption through [a] public trial and conviction [for bribery]." *Id*.

The *Bracy* Court reversed the Appellate Court's denial of discovery, holding that the petitioner had shown good cause. *Bracy*, 520 U.S. at 909.  The Court specifically noted that the petitioner presented evidence that the trial judge was actually biased in petitioner's own case. *Id*. The Court noted that the trial judge appointed an attorney who had worked as an associate in the law firm where the judge had previously been employed, and the attorney was prepared  to present a

capital case in an unusually short time without requesting an extension.  *Id.*

Here, Petitioner merely asserts that the trial judge was biased throughout his case and the only evidence he presents in support of his claim that the judge requested to be disqualified before the Supreme Court of Ohio formally served him with an affidavit for disqualification.  ECF Dkt. #56 at 69.  Petitioner has not demonstrated how Judge Collier's request of disqualification prior to being formally served by the Supreme Court of Ohio established bias that affected any of Petitioner's proceedings that took place before Petitioner filed the June 1, 2007 post conviction petition.  Unlike the petitioner in *Bracy*, Petitioner has not made a specific showing that the trial judge was biased against him.  Accordingly, the undersigned recommends that the Court dismiss Ground Seven with prejudice due to a lack of merit.

### v.      Ground Nine

Most of the underlying motions giving rise to Ground Nine were collateral attacks.  The U.S. Supreme Court has held that there is no constitutional right to state postconviction review and no constitutional right to direct appeal. *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 121 S.Ct. 1567 (2001);  *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).  However, "if a State has created appellate courts as 'an integral part of the ... system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution."  *Evitts v. Lucey*, 469 U.S. 387, 392-93,  105 S.Ct. 830, 834 (1985) quoting *Griffin v. Illinois*, 351 U.S., at 12, 18, 76 S.Ct. 585, 590 (1956).

As discussed above, the Ohio court's based their vexatious litigator orders on reasonable grounds and placed reasonable limits on Petitioner's filings.  *See* § VI.A.i., *supra*.  Therefore, even if his due process claim in Ground Nine is timely, it lacks merit and the undersigned recommends that the Court dismiss it accordingly.

VII.    **CONCLUSION**

For the foregoing reasons the undersigned ORDERS:

> Petitioner's Motion for Leave to Object Against Incorrect And/Or Misleading Facts in the Warden's Traverse Response ECF #60.   (ECF Dkt #62) is DENIED;

> Petitioner's Motion to Reconsider District Court Order, Or, Correct Incorrect Facts with [ECF #45] On October 14, 2009 (ECF Dkt. #63) is STRICKEN;

> Discovery Motions:  ECF Dkt. # 57 is GRANTED IN PART (as to item #2 in Petitioner's motion) and DENIED IN PART (as to item #1, #3, and #4 in Petitioner's motion); ECF Dkt. ## 58 and 59 are DENIED; and ECF Dkt. #65 is GRANTED IN PART and DENIED IN PART, consistent with § IV(C) of this order.

The undersigned ORDERS Respondent to file any documents ordered to be produced on or before June 18, 2010.

The undersigned RECOMMENDS that the Court DISMISS Grounds One through Eight and Ground Ten as time-barred and dismiss Ground Nine due to a lack of merit.

Date:  June 4, 2010                          _/s/   **George J. Limbert**_____
                                             GEORGE J. LIMBERT
                                             UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.  L.R. 72.3(b).